# Nagle *versus* Allegheny Valley Railroad Company.

1. An infant of the age of fourteen years is presumed to have sufficient capacity to be sensible of danger and to have the power to avoid it, and this presumption will stand until overthrown by clear proof of the absence of such discretion as is usual with infants of that age.

2. When an infant's responsibility for negligence is presumed to commence is a question for the court and not for the jury.

| 88 | 35 |
| 128 | 204 |
| 128 | 205 |
| 88 | 35 |
| 130 | 394 |
| 88 | 35 |
| 144 | 360 |
| 88 | 35 |
| 204 | 626 |
| 88 | 35 |
| e207 | [1]441 |
| 88 | 35 |
| f 210 | [1] 47 |
| 88 | 35 |
| 32 SC | [2] 29 |
| 33 SC | [1] 16 |

November 7th 1878. Before AGNEW, C. J., SHARSWOOD, MER-CUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1878, No. 6.

Case by Peter Nagle against the Allegheny Valley Railroad Company, to recover damages for the death of plaintiff's son through the alleged negligence of defendant.

On the 4th day of November 1875, Jacob Nagle, son of the plaintiff, a lad of fourteen years, was employed in the steel-works of Messrs. Reese, Graff & Woods, on Thirty-second street, in the city of Pittsburgh. The Allegheny Valley Railroad Company had a lateral track laid for the accommodation of the steel company, from their main track, along Thirty-second street to the Allegheny river. The buildings of the company were erected on both sides of Thirty-second street, and the lateral road ran within three or four feet of the buildings on the west side. The lad was employed in the buildings on the east side of the street, and at the dinner hour had gone over to the buildings on the west side, to eat his dinner, with other boys of his acquaintance. Whilst sitting there, the whistle sounded for return to work, when the boy started up and went through a sliding-door to cross the track, when he was caught by a passing engine and instantly killed. The boy could not be seen by the engineer until he came out of the door, nor could he see the engine. A city ordinance forbids the running of any train at a greater rate of speed than four miles per hour, and requires that the bell of the engine shall be rung when passing along the streets. The witnesses who saw the engine were of opinion that it was running at a rate of about twelve miles. an hour, but could not state whether the bell of the engine was ringing or not, owing to the noise created by the movement of the machinery in the mill.

The court (Kirkpatrick, A. L. J.), upon these facts, entered a nonsuit, on the ground that the plaintiff had shown no negligence on the part of the defendant, and that the evidence showed that there had been contributory negligence on the part of the deceased lad. The court in banc refused to take off this nonsuit, when the plaintiff sued out this writ.

*Moore & Milligan,* for plaintiff in error.—The immediate and direct cause of the boy's death was the fact that the engine was running much faster than the law allowed. It is not an answer to say that the boy's rashness was the cause. The question of con-tributory negligence is to be determined by reference to the age and intelligence of the person injured, and the circumstances under which the injury was sustained ; and under this principle the plain-tiff was clearly entitled to recover: Pennsylvania Railroad Co. *v.* Kelly, 7 Casey 377 ; Rauch *v.* Lloyd & Hill, Id. 370 ; Oakland

[Nagle *v.* Allegheny Valley Railroad Co.]

Railway Co. *v.* Fielding, 12 Wright 320; Crissey *v.* Hestonville Railway Co., 25 P. F. Smith 83; P. & R. Railroad Co. *v.* Long, Id. 257; Philadelphia City Passenger Railway Co. *v.* Hassard, Id. 367.

*Hampton & Dalzell,* for defendant in error.—While it cannot be contended that the engineer could have done aught to avoid the accident, the boy jumping suddenly, as he did, right under the engine, the startling position is taken that the rate of speed was the *proximate cause* of the injury, because if the engine had been going more slowly the boy would have been over the track before he could have been caught. But the immediate cause of the injury was the boy's own recklessness in jumping on a railroad track over which he knew trains were constantly passing, without stopping to look or listen, and it is not the remote negligence of the company we must look to, but the proximate—that is, the conduct of the engineer on the engine at the time of the injury: Philadelphia and Reading Railroad Co. *v.* Spearen, 11 Wright 301; Morrison *v.* Davis, 8 Harris 171; Shultz *v.* Pennsylvania Railroad Co., 6 W. N. C. 69.

Mr. Justice PAXSON delivered the opinion of the court, January 6th 1879.

It was conceded upon the argument that if the deceased boy, Jacob Nagle, had been an adult, the defendant corporation would not have been responsible for his death, for the reason that it was the result of his own rashness in attempting to cross the track immediately in front of the locomotive. At the time of the unfortunate accident, which resulted in his death, he was employed in the steel works of Messrs. Reese, Graff & Woods, on Thirty-second street, in the city of Pittsburgh. The Allegheny Railroad Company had a lateral track for the accommodation of the steel company, from their main track along Thirty-second street to the Allegheny river. The buildings of the company were erected on both sides of Thirty-second street, and the lateral road ran within three or four feet of the buildings on the west side. Sliding-doors gave exit immediately on to the track. The boy was employed in the buildings on the east side of the street; and at the dinner hour had gone over to the buildings on the west side to eat his dinner with other boys of his acquaintance. Whilst sitting there, the whistle sounded for return to work, upon which he instantly started to run across to his own shop, and in doing so, passed out of the sliding-door to cross the track, was caught by a passing locomotive and instantly killed. At this point he could not see the engine, nor could the engineer see him. The mill had started up, and the noise of the machinery probably prevented his hearing the approach of the engine or the ringing of the bell, if in point of fact the bell was rung. The place where the accident occurred was a place of danger; an engine was

liable to pass along by the sliding-door at any moment. What occurred, is told by Frederick Kiefer, a witness for the plaintiff, in a few words: "Just as I entered the mill I heard the whistle blow; after I entered the building, the whistle ceased blowing, and at that moment the boy rushed past me on to the railroad track, and the locomotive run over him." Upon this state of facts, the learned judge nonsuited the plaintiff, and subsequently refused to take the nonsuit off, which is assigned for error here.

It is undoubtedly true that negligence cannot be imputed to one who has not sufficient capacity or discretion to understand the danger, and to use the proper means to guard against it. Thus, it has been repeatedly held, that when an injury has been inflicted upon a child of tender years, by negligence on the part of corporations or individuals, the incapacity of the child to know the danger and avoid it, shields it from responsibility. It is sufficient for present purposes, to cite Rauch *v.* Lloyd, 7 Casey 370; Smith *v.* O'Connor, 12 Wright 222; North Penn. Railroad Co. *v.* Mahoney, 7 P. F. Smith 187; Kay *v.* Pennsylvania Railroad Co., 15 Id. 276; Railway Co. *v.* Caldwell, 24 Id. 421; Same *v.* Hazzard, 25 Id. 367; Same *v.* Lewis, 29 Id. 33. It was strongly urged that the case in hand falls within the principle and authorities above cited, and that at least the case should have gone to the jury upon the question of the concurring negligence of the boy, in connection with his age and the surrounding circumstances; that it was error for the court to declare the responsibility of the boy for his admitted negligence.

It is the province of the jury to settle controverted questions of fact. Upon an admitted state of facts it is the duty of the court to declare the law: Hoag *v.* The Railroad Company, 4 Norris 293. Nor are questions of negligence an exception to this rule. There are certain things which the law declares to be negligence *per se;* the duty being the same under all circumstances. Thus, it has been repeatedly held, that when a person attempts to cross a railroad track, it is his duty to stop, look and listen, and that the omission to do so is negligence: Pennsylvania Railroad Co. *v.* Beale, 23 P. F. Smith 507; Railroad Co. *v.* Stinger, 28 Id. 219; Pennsylvania Railroad Co. *v.* Barnett, 9 Id. 259; McCully *v.* Clarke, 4 Wright 399. Under this rule, upon the plaintiff's own showing, it was the duty of the court to nonsuit him, unless it appears from the evidence, that the deceased boy was of such tender years or limited mental capacity as not to be responsible for his own negligence.

All of the cases above referred to were those of mere children. We are dealing with a different question. Jacob Nagle, at the time of his death, was between fourteen and fifteen years of age. His father had placed him in this rolling-mill some two months previously. He was there earning his living in a regular employment. The employment itself was a dangerous one. There is not an hour of the day when the machinery of a rolling-mill is in operation, that

[Nagle *v.* Allegheny Valley Railroad Co.]

vigilance and care are not required on the part of the employees to avoid injury. It ill becomes the father who placed this boy amid such scenes of danger, and who is seeking to recover damages for his death, now to aver that his son was of such tender years or feeble mind as to be unable to understand the danger or to avoid it. No such attempt was made upon the trial of the case. No evidence was offered to show that although he had arrived at years of puberty, he was yet immature for his age; that although earning his support in a dangerous mill, and acting the part of a person of mature years with his father's consent, he was yet a mere child in intelligence and physical strength. Such evidence would have been competent. Its absence leaves the argument of the plaintiff without any base for its support.

The law fixes no arbitrary period when the immunity of childhood ceases and the responsibilities of life begin. For some purposes majority is the rule. It is not so here. It would be irrational to hold that a man was responsible for his negligence at twenty-one years of age, and not responsible a day or a week prior thereto. At what age then must an infant's responsibility for negligence be presumed to commence? This question cannot be answered by referring it to the jury. That would furnish us with no rule whatever. It would give us a mere shifting standard, affected by the sympathies or prejudices of the jury in each particular case. One jury would fix the period of responsibility at fourteen, another at twenty or twenty-one. This is not a question of fact for the jury. It is a question of law for the court. Nor is its solution difficult. The rights, duties and responsibilities of infants are clearly defined by the text-writers, as well as by numerous decisions. Upon so plain a question it is sufficient to refer to Sharswood's Blackstone, vol. 1, p. 435, 464; Id. iv., p. 20, where we learn that fourteen is the age of discretion in males and twelve in females; that at fourteen an infant may choose a guardian and contract a lawful marriage. His responsibility to the criminal law is equally well settled. Under seven years of age an infant cannot be guilty of felony, for then a felonious discretion is almost an impossibility in nature; but at eight years old he may be guilty of felony: Dalt. Just., c. 147. Between the ages of seven and fourteen, though an infant shall be prima facie adjudged to be *doli incapax*, yet if it appear to the court and jury that he was *doli capax*, and could discern between good and evil, he may be convicted and suffer death. After fourteen an infant is responsible for his crimes to the same extent as an adult.

We have thus seen that the law presumes that at fourteen years of age an infant has sufficient discretion and understanding to select a guardian and contract a marriage; is capable of harboring malice and of taking human life under circumstances that constitute the offence murder. It therefore requires no strain to hold that at

[Nagle *v.* Allegheny Valley Railroad Co.]

fourteen an infant is presumed to have sufficient capacity and understanding to be sensible of danger, and to have the power to avoid it. And this presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of fourteen years of age.

The essential facts of this case not being in dispute, the court below was right in directing a nonsuit. Upon his own showing, the plaintiff was not entitled to a verdict. It was one of those painful accidents for which the law does not furnish a remedy in damages.        Judgment affirmed.

Chief Justice AGNEW filed a dissenting opinion, in which Mr. Justice GORDON concurred.