389 A.2d 108

**COMMONWEALTH of Pennsylvania**

v.

**Regina DURHAM, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1977.

Decided July 12, 1978.

Joseph M. Casey, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This is an appeal from an adjudication of delinquency based upon charges of aggravated assault [1] and possession of an instrument of crime.[2] Appellant, who was nine years old at the time of the incident, contends that the lower court erred in refusing to take cognizance of the presumption of incapacity which arises when a child between the ages of seven and fourteen is alleged to have committed a criminal act. We agree and therefore reverse.

The testimony below, to which both parties stipulated, was that as the complainant, Delores Davis, was walking by, appellant kicked dirt at her. A fight ensued and appellant, saying she was going to get her mother, ran into her house and procured a knife. The fray resumed and appellant stabbed the complainant in the arm and back.

The lower court denied defense counsel's motion for a directed verdict and adjudicated appellant a delinquent. Appellant's sole contention on appeal is that a directed verdict should have been granted since the Commonwealth failed to present any evidence to refute the presumption that appellant lacked the requisite criminal capacity. The lower court apparently based its ruling on the belief that the Juvenile Act, Act of December 6, 1972, P.L. 1464, No. 333, § 1 *et seq.*, 11 P.S. § 50–101 *et seq.* (Supp.1976–77), had preempted the common law presumption of incapacity which has long existed in Pennsylvania. *See, e. g., Commonwealth v. Green,* 396 Pa. 137, 151 A.2d 241 (1959); *Nagle v. Allegheny Valley Railroad Co.,* 88 Pa. 35 (1879). The judge's opinion attempts to bolster this conclusion by emphasizing that the Juvenile Court acts as *parens patriae* for the child, rather than as a retributive agent of the state.

1. 18 Pa.C.S.A. § 2702.

2. 18 Pa.C.S.A. § 907.

■ This rationale was first rejected by the Supreme Court of the United States in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). It is now clear that the juvenile, during the adjudicatory stages of a delinquency proceeding, is entitled to many of the due process safeguards accorded adult criminal defendants.[3] *Id.* Chief among these is the requirement that the Commonwealth prove every element of the crime beyond a reasonable doubt. *In re Terry,* 438 Pa. 339, 347, 265 A.2d 350, .354 n. 14 (1970), *quoting In re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645 (1975).

■ The common law presumption of incapacity, in the case of a child between the ages of seven and fourteen, is still very much alive in this jurisdiction. Nothing in the Juvenile Act indicates a contrary legislative intent.[4] In the instant case the Commonwealth made no attempt to rebut the presumption by introducing evidence of criminal capacity. In fact, the only evidence available on this issue was a neuro-psychological report in the file indicating that appellant suffered from "borderline retardation." Counsel for the prosecution made only a cursory argument on the issue of capacity, alluding to the fact that appellant said she was going into the house to get her mother, but instead got a knife, as an indication of an awareness of guilt. This implication, which was seized upon by the trial judge, is far from sufficient to rebut the presumption and satisfy the prosecution's burden of proving all elements of the crimes charged beyond a reasonable doubt. The motion for a directed verdict in favor of appellant was, therefore, improperly denied.

Reversed.

---

3. A notable exception is that the juvenile defendant is not entitled to a jury trial. *In re Terry,* 438 Pa. 339, 265 A.2d 350 (1970).

4. The lower court's citation of various sections of the Juvenile Act for the proposition that juveniles are to be afforded special protections reinforces our conclusion rather than indicating any departure from the common law presumption.

PRICE, J., files a dissenting opinion in which VAN der VOORT, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

PRICE, Judge, dissenting:

I dissent on two grounds. First, I do not believe that the common law presumptions affecting the capacity of children to commit crime apply to a juvenile proceeding to determine delinquency. Second, even assuming the common law rules apply, based on this record, there was sufficient evidence to rebut that presumption in the case of this nine year old appellant.

My first ground is, I believe, a matter of first impression in Pennsylvania. There is little doubt that the law is that a child under the age of seven is conclusively presumed to lack the capacity to commit a crime, that a child between ages seven and fourteen is entitled to a rebuttable presumption of incapacity and when the age of fourteen is reached any special immunity or presumption of incapacity ceases. But these presumptions, in the criminal law of Pennsylvania, have been applied where the child under discussion is being measured against adult standards. *See Commonwealth v. Green,* 396 Pa. 137, 151 A.2d 241 (1959); *Commonwealth v. Zietz,* 364 Pa. 294, 72 A.2d 282 (1950). That application I can accept. However, to make the application in juvenile proceedings is, to me, contrary to the whole concept of the creation of juvenile courts, which were created throughout the country in an attempt to depart from the traditional treatment of children as ordinary criminal defendants. Indeed, the use of presumptions concerning a child's capacity to commit crime was earlier born of the same effort. The majority would give appellant the benefit of both these efforts. I would not. Our present treatment of juveniles was developed as a more viable means to afford children even broader protection from the criminal process than that afforded by the common law rules of evidence in a criminal proceeding. I read nothing in *In re Gault,* 387 U.S. 1, 87

S.Ct. 1428, 18 L.Ed.2d 527 (1967), that compels a contrary conclusion.

As to my second ground for dissent, the record is short. It speaks for itself.

"MR. ROSEN: (appellant's attorney) Your Honor, I will agree to stipulate to the complainant's testimony as contained in the 49.

THE COURT: All right.

MR. COLIHAN: (Commonwealth's attorney) If I may, your Honor, the complainant is 12-year-old Delores Davis, and she lives at 5030 Cedar Avenue in Philadelphia, and she was interviewed by an assigned Detective Upchurch on the 30th of April at 10:30 P.M. inside Misericordia Hospital.

She stated—and I'll read this verbatim from the 49— that she had gone around to visit a friend who was visiting at Regina's house, stated she was walking towards the house and Regina and a friend was outside the house playing, stated when she and Gwen, . . . the visiting friend, . . . walked by Regina, . . . Regina, kicked dirt on her, stated she told Regina, 'You could say excuse me,' but Regina said nothing. Then Regina came over and hit her. She hit Regina back, and a fight started, stated Regina went into the house and came out with a bottle at first, and her cousin again, who was vis[i]ting at Regina's house, took the bottle and put it aside on the ground, stated then Regina ran into the house, check that, back in the house, and said she was going to get her mother. Instead she came out with this knife. Regina came over to her and said—quoting ahead—and hit me now, 'And I'm going to stab you with this knife,' stated she started towards Regina to try to take the knife from her, but she kicked her and Regina fell down. 'Regina got up, and we started fighting again. She still had the knife in her hand,' stated Regina had stabbed her in the left arm but she didn't feel that. 'The fight continued until we got out in the middle of the street. Then Regina reached around me when I got bent

over and stabbed me in the back. I tried to get up, but I got dizzy. So I just laid there until the police came. Some lady who had been watching the fight called the police,' and that's the end of the statement that appears in the 49.

We would rest on that statement.

MR. ROSEN: Your Honor, the defense rests and asks for a directed verdict of not guilty."

To my view, even applying the majority's standards, that brief, concise, agreed upon statement is clearly sufficient to rebut any presumption of incapacity.

I would affirm the adjudication of delinquency.

VAN der VOORT, J., joins in this opinion.