597 A.2d 638

**In the Interest of G.T.**

**Appeal of G.T., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 18, 1990.

Filed Sept. 12, 1991.

16

Bradley Bridge, Philadelphia, for appellant.

Susan Wilcox, Asst. Dist. Atty., Philadelphia, for the Com., participating party.

Before CIRILLO, President Judge, and CAVANAUGH, WIEAND, OLSZEWSKI, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

JOHNSON, Judge:

This case was certified for argument and decision by the court *en banc* to consider whether the enactment of the Juvenile Act, 42 Pa.C.S. §§ 6301 *et seq.*, eliminated the common law presumption, in juvenile proceedings, that children between the ages of seven and fourteen years lack the capacity to commit crimes.

Although counsel for G.T., the minor appellant, contends that a much narrower issue is presented on this appeal— *i.e.*, whether the juvenile hearing court, by striking a previously entered stipulation and refusing to allow G.T. to call a witness, denied G.T. his right to present a defense, to compulsory process, and to a statutory right to call witnesses—a proper determination of this question requires that we address the issue as previously stated. In so doing, we hold that the common law presumptions regarding a child's capacity to commit a criminal act are irrelevant to a determination of delinquency. We further conclude that the Honorable Joseph P. McCabe properly refused to receive proffered evidence of the juvenile's mental age, and we affirm the adjudication of delinquency and order of disposition.

On March 25, 1989, G.T., who was then thirteen years of age, was arrested for possessing two vials which contained cocaine. In a subsequent juvenile proceeding, after the Commonwealth had established G.T.'s physical possession of cocaine, the defense offered a stipulation of counsel that Dr. Pino, a court psychologist, had examined G.T. and was of the opinion that G.T. possessed the mental capacity of a

nine and one-half year old child. The hearing was recessed at this point without a ruling on the offer. When the hearing was resumed several days later, counsel for G.T. again offered the stipulation regarding Dr. Pino's opinion of mental age. At this time, counsel also requested that the court receive a copy of Dr. Pino's report or, in the alternative, hear Dr. Pino's testimony. The court refused to receive Dr. Pino's opinion in any form. Thereafter, G.T. was adjudicated delinquent and was committed to the Sleighton School on May 9, 1989. This appeal followed.

In his opinion, Judge McCabe acknowledged that he had refused to consider evidence of G.T.'s alleged mental age. The court stated that the Juvenile Act, 42 Pa.C.S. § 6301, *et seq.*, abolished the infancy defense, *i.e.*, the common law presumption that children between the ages of seven and fourteen years lack the capacity to commit crimes, for the purposes of juvenile proceedings. Opinion, McCabe, J., July 5, 1989, at 3, 4. The court concluded from the statutory definition of "delinquent child" that children ten years of age or older are conclusively presumed to be responsible for their acts of delinquency. *Id.*

On appeal, G.T. contends that, by refusing to accept the proffered evidence, the trial court committed reversible error, and states his issue as follows:

Did not the trial court err by denying the appellant his state and federal constitutional rights to present a defense, to compulsory process and to due process of law, and his right under Section 6338 of the Juvenile Act "to introduce evidence" at his adjudicatory hearing, when it refused to allow appellant to present evidence of a court psychologist that appellant, age thirteen, possessed the mental capacity of a child age nine and a half and, therefore, lacked the capacity to form the *mens rea* required to commit the offense for which he was charged?

Brief for Appellant on Reargument at 2.

██ G.T.'s assertion of error is premised upon the belief that mental age is relevant to a determination of

capacity to commit a crime, and that such a determination of capacity is relevant in a juvenile delinquency proceeding. Because we conclude that capacity is not relevant to a determination of delinquency, we find no error in Judge McCabe's refusal to admit the evidence offered to establish a lack thereof.

The Juvenile Act defines a child as an individual less than eighteen years of age, and a "delinquent child" as a "child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation." 42 Pa.C.S. § 6302. That section further states, in pertinent part, that a "delinquent act" is "an act designated a crime under the law of this Commonwealth...." *Id.* We must therefore look to the Pennsylvania Crimes Code for substantive definitions of those acts which are designated as crimes, but which constitute acts of juvenile delinquency when committed by children from ages ten to eighteen.

■■■ We have stated that, except where the legislature has clearly defined a crime so as to make proof of criminal intent or guilty knowledge unnecessary, criminal intent or guilty knowledge is an essential element of any offense. *Commonwealth v. Hogan,* 321 Pa.Super. 309, 468 A.2d 493 (1983) *(en banc)* *(citing Commonwealth v. Koczwara,* 397 Pa. 575, 582, 155 A.2d 825, 828 (1959) *cert. denied.* 363 U.S. 848, 80 S.Ct. 1624, 4 L.Ed.2d 1731 (1960)); *Commonwealth v. Grant,* 235 Pa.Super. 357, 364–65, 341 A.2d 511, 515 (1975). Further, the Commonwealth has the unshifting burden of proof of each element of a criminal offense. *Commonwealth v. Owens,* 444 Pa. 521, 281 A.2d 861 (1971). During the adjudicatory stages of a delinquency proceeding, the juvenile is entitled to the same standards of proof as to all elements of an offense as in a criminal proceeding. *In re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368, 377–78 (1970); *In Re Terry,* 438 Pa. 339, 265 A.2d 350, *aff'd sub nom. McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

 It follows that, where *mens rea* would be an element of an offense in a criminal setting, the Commonwealth is not relieved of its burden of proof merely by virtue of proceeding in a juvenile court.

Contending that capacity is relevant to a determination of whether a delinquent act has been committed, G.T. argues that a necessary element of *mens rea* would otherwise be impermissibly omitted. In so arguing, appellant appears to have commingled the entirely distinct concepts of *mens rea* and capacity, and it is at this point in the analysis that we differ from the propositions he posits.

The common law erected presumptions regarding a child's age and capacity to appreciate the wrongfulness of his acts. A child between the ages of seven and fourteen was rebuttably presumed to lack such capacity, although the strength of the presumption grew weaker as the child aged. *Parker v. Washington Electric Street Railway Company*, 207 Pa. 438, 56 A. 1001 (1904). Counsel for G.T. argues that evidence relevant to G.T.'s alleged mental age of nine and one-half years, although G.T. is age thirteen, is relevant to demonstrate that G.T. would less likely command a capacity for such understanding. He contends that Judge McCabe erred by refusing to admit this evidence.

 As opposed to capacity, however, the term *mens rea* refers to a mental state, often an element of an offense, which expresses the intentionality necessary for an act to constitute a crime. *See, Commonwealth v. Zettlemoyer*, 500 Pa. 16, 27, 454 A.2d 937, 943 (1982). Capacity, in terms of the infancy defense, refers, not to the ability to formulate *mens rea*, as argued by appellant, but to the ability to appreciate the criminality and wrongfulness of one's acts. *See* F. McCarthy, *The Role of the Concept of Responsibility in Juvenile Delinquency Proceedings*, 10 University of Michigan Journal of Law Reform 181, 183–185 (1977). It is this capacity, and not the ability to formulate the necessary intention, that is the subject of the common law presumptions regarding children. These separate concepts were

distinguished by the Supreme Court of Connecticut in *In re Tyvonne*, 211 Conn. 151, 558 A.2d 661 (1989), when it said:

> The common law defense of infancy, like the defense of insanity, differs from the criminal law's requirement of *"mens rea"* or criminal intent. The law recognized that while a child may have actually intended to perform a criminal act, children in general could not reasonably be presumed capable of differentiating right from wrong. The presumptions of incapacity were created to avoid punishing those who, because of age, could not appreciate the moral dimensions of their behavior, and for whom the threat of punishment would not act as a deterrent.

*Id.* at 156, 558 A.2d at 664 (citations omitted). The Supreme Court of the State of Washington also recognized the distinction between these concepts in *State v. Q.D.*, 102 Wash.2d 19, 685 P.2d 557 (1984), when it said:

> While capacity is similar to the mental element of a specific crime or offense, it is not an element of the offense, but is rather a general determination that the individual understood the act and its wrongfulness. . . .
>
> Were capacity an element of the crime, proof beyond a reasonable doubt would be required. But capacity, not being an element of the crime, does not require as stringent a standard of proof.

*Id.* at 24, 685 P.2d at 561 (citations omitted). In adjudicating G.T. delinquent, Judge McCabe concluded that the common law concept of capacity is irrelevant to a determination of whether a juvenile's conduct amounts to an act of delinquency. For the reasons which follow, we agree.

As explained by the commentators on the subject, the common law presumptions were established long before the creation of juvenile courts in recognition of the fact that children should generally not be held criminally responsible for their acts. *See* F. McCarthy, *The Role of the Concept of Responsibility in Juvenile Delinquency Proceedings*, 10 University of Michigan Journal of Law Reform 181, 183–185 (1977). Within the juvenile justice system, however, there is no need for such presumptions, as the primary

purpose of the juvenile system is not to punish children for their crimes but to "ascertain whether problems existed and if so, whether they could be rectified...." F. McCarthy, *Juvenile Delinquency Practice and Procedure* §§ 2-4, at 19 (1984). *See also,* 42 Pa.C.S. § 6301(b)(1)–(2), which provides that the purpose of the Juvenile Act is to:

(1) ... provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this chapter[; and]

(2) ... to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation.

Confronted with whether capacity is relevant in juvenile delinquency proceedings, the Supreme Court of Connecticut stated:

With the enactment of juvenile justice legislation nationwide, several courts have addressed the issue whether the infancy defense applies to delinquency proceedings. Most have held that, in the absence of legislation codifying or adopting the defense, incapacity is not a defense in delinquency proceedings. These courts observe that because a delinquency adjudication is not a criminal conviction, it is unnecessary to determine whether the juvenile understood the moral implications of his or her behavior. In addition, some decisions recognize that the defense would frustrate the remedial purposes of juvenile justice legislation.

*In re Tyvonne,* 211 Conn. at 161, 558 A.2d at 666 (citations omitted). We agree. The purpose of determining delinquency under the Juvenile Act is to identify those children who have committed an act which would be a crime if it had been committed as an adult and who are, therefore, in need of special treatment, supervision and rehabilitation. Delinquency proceedings are not criminal in nature but are intended to address the special problems of children who have engaged in aberrant behavior disclosing a need for special treatment. Therefore, the defense of infancy, cre-

ated to protect children from retribution in recognition of their inability to differentiate right from wrong, is irrelevant to a determination regarding a juvenile's amenability to treatment, rehabilitation and supervision. Indeed, the Act provides that, in some instances where it is determined that rehabilitative goals cannot be met, the court may rule that the offense should be prosecuted, and transfer the matter to criminal proceedings. *See* 42 Pa.C.S. § 6355(a)(4)(iii)(A).

To permit the infancy defense in proceedings under the Juvenile Act would operate to remove some juveniles from both the adult and the juvenile systems, and prevent the child from receiving the care and rehabilitation that our Legislature has deemed appropriate. We are not inclined to interpret and apply the Juvenile Act in such a way as to frustrate what we perceive to be its purpose.

We believe that the Commonwealth correctly asserts that the Legislature, by defining a "delinquent child" to be "[a] child *ten years of age or older* whom the court has found to have committed a delinquent act....," 42 Pa.C.S. § 6302 (emphasis added), has established conclusively that children aged ten years and older have the capacity to commit delinquent acts thereby abrogating any common law considerations to the contrary. A similar view was expressed by the Honorable Peter Paul Olszewski in *In the Interest of E.J.*, 397 Pa.Super. 120, 125–126, 579 A.2d 960, 963 (1990) (en banc), where, in a concurring opinion, he stated:

> Statutes are not presumed to change the common law unless expressly declared in their provisions, *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976); however, where the Legislature expressly provides a comprehensive definitional scheme, these provisions supercede [sic] the prior common law principles. Under the Juvenile Act of 1976 (as amended in 1977), the Legislature has expressly included specific ages and categories that replace the common law presumption concerning the capacity of a child to commit a criminal act. 42 Pa.C.S.A.

§§ 6301–6302. The plain language of § 6302 provides that a "delinquent child" is "[a] child ten years of age or older whom the court has found to commit a delinquent act ...," and a "dependent child" is "[a] child who ... is under the age of ten years and has committed a delinquent act." 42 Pa.C.S.A. 6302.

Moreover, the common law presumptions are inapplicable to juvenile proceedings which were created in order to protect children from the harsh punishments of the adult criminal system. *See Commonwealth v. Durham*, supra [255 Pa.Super. 539, 389 A.2d 108 (1978)] (Price, J., dissenting). In my view, the Juvenile Act accomplishes the goal of removing the consequences of criminal behavior from those children who have committed delinquent acts and instead substitutes a program of supervision, care and rehabilitation. See 42 Pa.C.S.A. § 6301(b)(2).

*Id.* (Olszewski, J., concurring) (footnote omitted).

■ Furthermore, while we recognize that repeals of the common law by implication are disfavored, we are not of the opinion that our decision today encroaches upon the common law defense. The infancy defense arises in a *criminal* proceeding and, as we have stated, a delinquency proceeding is not criminal in nature.

■ Accordingly, we hold that any operation which the common law presumptions of capacity would otherwise have in adjudications of delinquency have been supplanted by our legislature's comprehensive definitional scheme encompassed within the Juvenile Act.

■ Finally, the introduction of psychiatric testimony was also inadmissible to show a lack of specific intent. In this Commonwealth, "psychiatric testimony is admissible only to negate the specific intent required to establish first degree murder." *Commonwealth v. Garcia*, 505 Pa. 304, 311, 479 A.2d 473, 477 (1984). *See Commonwealth v. Swartz*, 335 Pa.Super. 457, 484 A.2d 793 (1984) (psychiatric testimony cannot be considered to aid a jury in determining whether the defendant formed the necessary intent to com-

mit robbery). *See also, Commonwealth v. Terry,* 513 Pa. 381, 393–394, 521 A.2d 398, 404 (1987), *cert. denied,* 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987); *Commonwealth v. Weinstein,* 499 Pa. 106, 451 A.2d 1344 (1982); *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976).

In conclusion, we hold that the infancy defense, created to protect children from being punished as criminals, is irrelevant in determinations of delinquency in our juvenile justice system. To the extent that *Commonwealth v. Durham,* 255 Pa.Super. 539, 389 A.2d 108 (1978) (*en banc*), a case which permitted the infancy defense in a proceeding under the former Juvenile Act, may be relied upon for a contrary result, it is expressly overruled by our decision today.

For the foregoing reasons, we affirm the adjudication of delinquency and order of disposition.

Order affirmed.