**Commonwealth v. Ramadan**

C.P. of Lehigh County, no. 2004/2473.

*Matthew Falk, deputy district attorney,* for the Commonwealth.

*Kathryn Roberts,* for defendant.

STEINBERG, *J.,* March 23, 2005—On May 21, 2004, the defendant, Missad Ramadan, who was employed as an ice cream truck vendor, was arrested and charged with failure to register, for 10 years, as required of certain

offenders,[1] a felony of the third degree. It is alleged that his adjudication as a juvenile in New Jersey for sexual assault in 1996 and subsequent placement on probation required him to register as a sexual offender in Pennsylvania under what is commonly described as Megan's Law. 42 Pa.C.S. §§9791-9799.

The registration requirement for out-of-state offenders at the time of the defendant's arrest was found in 9795.2(b),[2] which provided the following:

"(b) *Individuals convicted in jurisdictions outside this Commonwealth*—

"(1) The registration requirements of this subchapter shall apply to individuals *convicted* of an equivalent offense listed in section 9795.1 where the conviction occurred in another state, territory, federal court or the District of Columbia or where the individual was sentenced by court martial, or where the individual was required to register under a sexual offender statute in the jurisdiction where the individual was convicted, and the individual:

"(i) resides in this Commonwealth; or

"(ii) is employed or is a student in this Commonwealth.

"(2) An individual subject to registration under this subsection shall register within 10 days of his arrival in this Commonwealth.

---

1. 42 Pa.C.S. §9795.2(b)(1)(i), (b)(2).

2. The legislature, following the defendant's arrest, amended this section, effective January 24, 2005, and it is now referred to as Megan's Law III. 2004 Pa. Legis. Serv. Act 2004-152. See Act of May 10, 2000, P.L. 74, no. 18 (as amended 42 Pa.C.S. §§9791-9799.7) (Megan's Law II); Act of October 24, 1995, P.L. 1079 (Spec. Sess. no. 1) (Megan's Law I).

524

"(3) An individual subject to registration under this subsection who is paroled to the Commonwealth pursuant to the interstate compact for the supervision of parolees and probationers shall, in addition to the requirements of this subchapter, be subject to the requirements of section 33 of the Act of August 6, 1941 (P.L. 861, no. 323), referred to as the Pennsylvania Board of Probation and Parole Law." (emphasis added)

Counsel for the defendant filed a "Motion to quash criminal information" with a supporting "Pretrial memorandum of law" which, among other claims, directs our attention to the word "conviction" in 9795.2(b) and contends 9795.2(b) does not apply to adjudications. In other words, it is alleged that the word "conviction" is limited in definition to adult convictions and does not include juvenile adjudications. Following the presentation of arguments and consideration of additional memorandum from counsel for the Commonwealth and the defendant, it is apparent that an adjudication of delinquency is not a conviction under 9795.2(b).

"When the term 'conviction' is used in a statute it means 'the ascertainment of the guilt of the accused and judgment thereon by the court.' " *Commonwealth v. Kimmel,* 523 Pa. 107, 111, 565 A.2d 426, 428 (1989) (quoting *Commonwealth v. Minnich,* 250 Pa. 363, 367, 95 A. 565, 567 (1915)). An individual who has charges sustained under a juvenile act is adjudicated delinquent, but is not convicted. *In re R.A.,* 761 A.2d 1220, 1224 (Pa. Super. 2000). See *In Interest of J.F.,* 714 A.2d 467, 473 (Pa. Super. 1998) ("[A] juvenile who is adjudicated delinquent does not face the grave consequences of criminal conviction and incarceration."); *In Interest of G.T.,*

409 Pa. Super. 15, 22, 597 A.2d 638, 641 (1991) ("Delinquency proceedings are not criminal in nature but are intended to address the special problems of children who have engaged in aberrant behavior disclosing a need for special treatment."); see also, *In re C.M.T.,* 861 A.2d 348 (Pa. Super. 2004). Our Juvenile Act also expressly states that adjudication is not a conviction. 42 Pa.C.S. §6354(a).[3]

This does not mean that juvenile adjudications have not been treated as convictions in certain circumstances. For example, in *Commonwealth v. Baker,* 531 Pa. 541, 564-68, 614 A.2d 663, 674-76 (1992), juvenile adjudications were introduced to demonstrate "a significant history of felony *convictions* involving the use or threat of violence to the person" at a death penalty hearing.[4] A review of that decision, however, suggests that it limited the use of adjudications to sentencings in order to permit consideration of the full range of sentencing alternatives.

On other occasions, the appellate courts have concluded that the words conviction and adjudication are not synonymous. *In re R.A.,* 761 A.2d at 1223-24 (language in 18 Pa.C.S. §4954 permitting protective orders "over any criminal matter" did not extend to juvenile proceedings); *Commonwealth v. Goggins,* 748 A.2d 721, 731 (Pa. Super. 2000) (prior adjudications cannot be uti-

---

3. Juvenile proceedings and criminal proceedings have been differentiated since 1893. *Commonwealth v. Baker,* 531 Pa. 541, 566 n.8, 614 A.2d 663, 675 n.8 (1992).

4. If juveniles cannot be executed, as the Supreme Court recently held in *Roper v. Simmons,* 125 S.Ct. 1183, 2005 WL 464890 (March 1, 2005), due to a lack of maturity, then the use of juvenile adjudications to support an aggravating circumstance in a death penalty case will in all likelihood be revisited.

lized to enhance sentence under mandatory drug trafficking sentencing and penalties. 18 Pa.C.S. §7508); *Commonwealth v. Thomas,* 743 A.2d 460 (Pa. Super. 1999) (juvenile adjudications could not be treated as predicate convictions under three strikes law); *In Interest of Wilson,* 367 Pa. Super. 321, 532 A.2d 1167 (1987) (adjudication of delinquency was not conviction of a crime for purposes of escape statute).

Both the Crimes Code and the Vehicle Code contain similar definitions of the word conviction, which do not include an adjudication of delinquency. See 18 Pa.C.S. §109(3); 75 Pa.C.S. §6501(a) ("[A] conviction includes a plea of guilty, a plea of nolo contendere, a finding of guilty by a court . . . ."). Additionally, the Vehicle Code was amended to include juvenile adjudications as predicate offenses necessitating the enhancement of an offender's sentence. 75 Pa.C.S. §3806. Earlier decisions interpreting the Vehicle Code concluded that "in the absence of an express inclusion of juvenile delinquency adjudications as convictions by the Vehicle Code" such adjudications are not to be considered convictions. *Commonwealth v. Rudd,* 366 Pa. Super. 473, 478, 531 A.2d 515, 518 (1997). Other statutes, which similarly did not consider "convictions" and "adjudications" the same, have been amended to permit the use of juvenile adjudications. See *Commonwealth v. McKeever,* 455 Pa. Super. 605, 689 A.2d 272 (1997) (juvenile adjudications were inadmissible for impeachment purposes prior to the amendments to the Juvenile Act).

An examination of both Megan's Law I and Megan's Law II reveal that neither uses the word adjudication. However, the recent amendments to Megan's Law (Megan's Law III) now include the phrase "adjudicated

delinquent." 42 Pa.C.S. §9795.2(b). This statute now requires individuals "adjudicated delinquent" in other jurisdictions to register as sexual offenders in Pennsylvania if they were required to do so under the laws of the original jurisdiction.[5]

Our Supreme Court has not defined the word "conviction" in Megan's Law II, and so it is necessary to "discern the legislative intent underlying its enactment." *Thomas,* 743 A.2d at 464 (citing *Commonwealth v. Lopez,* 444 Pa. Super. 206, 663 A.2d 746 (1995)). To do so, various provisions of the Statutory Construction Act, 1 Pa.C.S. §1501 et seq., must be considered.

Initially, the word "conviction" is a technical word that must be construed according to its "peculiar and appropriate meaning." 1 Pa.C.S. §1903(a). Both the legislature and the courts have had little trouble treating the word "conviction" separately from the phrase "adjudication of delinquency." For example, the DNA Detection of Sexual and Violent Offenders, 44 Pa.C.S. §§2301-2336, requires "[a] person who is convicted or adjudicated delinquent" for specified offenses to have a DNA sample drawn. See 44 Pa.C.S. §2316(a).[6] Not only does this demonstrate the legislature's awareness of a difference between "conviction" and "adjudicated delinquent," but it also, to some degree, provides evidence of their legislative intent. Both the DNA data testing statute and Megan's Law are methods of protecting the public from sexual offenders. Securing DNA samples pro-

5. The legislature, however, continued to use only the word "conviction," and not the phrase "adjudicated delinquent" with respect to offenders who, while they reside in Pennsylvania, commit any of the enumerated offenses, which require registration. 42 Pa.C.S. §9795.1

6. See also, 18 Pa.C.S. §6105(c)(7), (8).

vides a database to utilize, for comparison purposes, in future investigations. Megan's Law provides law enforcement with a registry of sexual offenders in the community. However, the legislature, until recently, required DNA samples from those "adjudicated delinquent," but did not include that phrase in the registration requirements of sexual offenders. The Commonwealth would suggest it was unnecessary to do so, and it is nothing more than "semantics."[7]

The defendant is charged under a penal statute. One of the elements of the offense requires the Commonwealth to prove beyond a reasonable doubt that the defendant was "convicted" of a predicate sexual offense in New Jersey. "[P]enal statutes . . . which define criminal offenses and specify their corresponding fines and punishment, must be strictly construed." *Commonwealth v. Henderson,* 444 Pa. Super. 170, 179, 663 A.2d 728, 733 (1995). Although "[t]he need for strict construction does not require that the words of a penal statute be given their narrowest possible meaning . . . [i]t does mean . . . that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused." *Commonwealth v. Scolieri,* 571 Pa. 658, 668, 813 A.2d 672, 678 (2002) (quoting *Commonwealth v. Booth,* 564 Pa. 228, 766 A.2d 843 (2001)). "Significantly, a court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope." *Booth,* 766 A.2d at 846. See *In re M.H.,* 864 A.2d 1251, 1255 (Pa. Super. 2004).

---

7. Commonwealth letter brief, p. 4.

The Commonwealth, by treating the term "adjudicated delinquent" as synonymous with the term "conviction," is attempting to "broaden" the scope of the statute. It is their belief that this was the intention of the legislature. In other words, it is their contention that the registration requirement for sexual offenders acts, in some manner, as a restraint on both adult and juvenile ice cream vendors. Furthermore, as evidence of the legislative intent, they direct our attention to the legislative findings and declaration of policy, 42 Pa.C.S. §9791, which make reference to "offenders" and "persons," but not juveniles.[8]

The Commonwealth's arguments about legislative intent ignore both the concept of strict construction and the competing legislative interest in the treatment of juveniles. "Strict construction is a means of assuring fair-

---

8. The Commonwealth also directs our attention to *Commonwealth v. Schoonover,* 530 CR 2003, Yoder, J., a common pleas decision that reaches a contrary decision based upon an interpretation of 42 Pa. 6354(b)(4). This court has reviewed and considered that decision, but does not find it persuasive, and it is not binding precedent. See *Castle Pre-Cast v. Strauss-Hammer,* 416 Pa. Super. 53, 57, 610 A.2d 503, 505 (1992) (holding that a trial court decision from one county is not binding precedent for any other county). If Judge Yoder's interpretation of 6354(b)(4) is correct, then juvenile adjudications would always be admissible in subsequent court proceedings, and the limited exceptions found in section 6354(b) would be unnecessary. See *In re J.M.P.,* 863 A.2d 17 (Pa. Super. 2004) ("[G]enerally, adjudications of delinquency are inadmissible in subsequent court proceedings . . . ."). The 1995 amendment adding section 6354(b)(4) has permitted juvenile adjudications to be used for impeachment purposes. See also, Pa.R.E. 609(d). Juvenile adjudications have not, however, been used interchangeably with convictions when a conviction is an element of the criminal offense. *In re J.H.,* 737 A.2d 275, 278 n.3 (Pa. Super. 1999) ("the tendency to interchange these terms [adjudication and conviction] is common, . . . but this still does not make them equivalent.").

ness to persons subject to the law by requiring penal statutes to give clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be." *Commonwealth v. Reaser,* 851 A.2d 144, 149 (Pa. Super. 2004) (quoting *Commonwealth v. Cluck,* 252 Pa. Super. 228, 238, 381 A.2d 472, 477 (1977)). The historic differences between adult and juvenile courts leads to the conclusion that juvenile adjudications are not the same as adult convictions. Juvenile records are frequently sealed, or at least not disseminated. 42 Pa.C.S. §6307-§6309. Cf. 42 Pa.C.S. §9795.4(c); *Commonwealth v. Carter,* 821 A.2d 601 (Pa. Super. 2003). Moreover, the use of the phrase "juvenile adjudications" in other statutes, such as the DNA Detection of Sexual and Violent Offenders, leads to the conclusion that the absence of that language in Megan's Law II, fails to provide "clear and unequivocal warning" that juvenile adjudications for the enumerated offenses required registration.

It is also arguable that the legislature did not intend to include juveniles within the registration rubric to avoid placing that stigma on them. Juvenile proceedings are not criminal proceedings, and requiring lifetime registration for offenses resolved in juvenile court would seem to be contrary to the purposes of the Juvenile Act. One of the purposes of the Juvenile Act is the following:

"Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care, and rehabilitation, which provide balanced attention to the protection of the community, the imposition of accountability, for offenses

committed and the development of competencies to enable children to become responsible and productive members of the community." 42 Pa.C.S. §6301(b).

The Commonwealth, however, sees no difference between the juvenile and adult sexual offender, and would seek to obligate all juvenile offenders with the same responsibilities as adult offenders.[9] They maintain this position even though the legislature has continued to distinguish between juvenile and adult sexual offenders. See 42 Pa.C.S. §6358 (assessment of delinquent children by the State Sexual Offenders Assessment Board).

It is true as stated in *In Interest of J.F.,* 714 A.2d 467, 471 (Pa. Super. 1998), that "the juvenile justice system has undergone a transformation over the past two decades in which there has been a move away from the rehabilitation and protection of juvenile offenders toward more punishment and correctional oriented policies. Nonetheless, . . . a juvenile adjudication has [not] become the equivalent of an adult criminal proceeding."

Other states have not adopted a consensus on this issue. A study completed in 2003 reflects that "nineteen states' statutes, including the District of Columbia, are silent as to whether their registration and notification requirements apply to juveniles adjudicated delinquent for sex offenses." [10] An earlier study found that "seven-

---

9. Although adults convicted or even placed on ARD (accelerated rehabilitative disposition) for sexual offenses cannot have their records expunged, the legislataure has not placed that impediment on juveniles. 18 Pa.C.S. §9123(a)(3), (4).

10. Elizabeth Garfinkle, *Coming of Age in America: The Misapplication of Sex-Offender Registration and Community Notification Laws to Juveniles,* 91 Cal. L. Rev. 163, 200 (2003). It is suggested in that article that "[b]ecause of substantial difference between adult and ju-

teen states *specifically* require registration by juvenile sex offenders who have been adjudicated delinquent in the juvenile court system. Five states exempt juvenile sex offenders adjudicated in the . . . juvenile system from registration. The remaining states require registration of persons who have been 'convicted' of, found guilty of, . . . committing one or more sex offenses." [11] See also, *State v. Ward,* 886 P.2d 890 (Kan. Ct. App. 1995) (A "juvenile" adjudication was not a conviction under the Habitual Sex Offender Registration Act because the Juvenile Offenders Code provides that adjudications under the Code are not criminal convictions).

The legislature could have included juvenile adjudications in Megan's Law II, but chose not to do so until Megan's Law III. 42 Pa.C.S. §9795.2(b) (individuals convicted or sentenced by a court or *adjudicated delinquent* in jurisdictions outside this Commonwealth . . .). Additionally, although not dispositive, juveniles in Pennsylvania, or other jurisdictions, who have in the past been adjudicated delinquent for qualifying sexual offenses have not been required to register. Even if the other state required a juvenile adjudicated delinquent to register, Pennsylvania did not require them to do so upon their arrival in this state. It is apparent that until recently our

---

venile sexual offending, as well as the differences between the procedures and outcomes of the juvenile and adult criminal justice systems, the interpretory presumption should always be that registration and community notification statues do not apply to juveniles adjudicated delinquent." *Id.* at 201.

11. Stacy Heller, *The Problem with Juvenile Sex Offender Registration: The Detrimental Effects of Public Disclosure,* 7 B.U. Pub. Int. L.J. 271, 278-79 (1998).

legislature treated adult and juvenile sexual offenders differently with respect to registration requirements.[12]

Finally, the defendant was charged with an offense that is alleged to have taken place on May 21, 2004. Following his arrest, and upon prompting by detectives of the Allentown Police Department, the defendant registered. Megan's Law III became effective January 24, 2005. Therefore, even assuming Megan's Law III is now applicable to the defendant, he has complied with the registration requirements. The Commonwealth's theory that the language of Megan's Law III can be used to prosecute the defendant for conduct that took place in May of 2004 is faulty, and would violate the ex post facto clauses of the Constitution. "The Constitution's two ex post facto clauses prohibit the federal government and the states from enacting laws with certain retroactive effects. See Article I, §9, cl 3 (federal government); Article I, §10, cl 1 (states)." *Stogner v. California,* 539 U.S. 607, 611, 123 S.Ct. 2446, 2449, 156 L.Ed.2d 544 (2003). In other words, the Commonwealth is attempting to retroactively criminalize conduct. *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). Additionally, the Commonwealth's argument would also seem to violate other ex post facto prohibitions pointed out by Justice Chase in *Calder v. Bull,* 3 U.S. 386, 3 Dal. 386, 1 L.Ed. 648 (1798), which remains the authoritative framework of the ex post facto clause. Their reliance on *Commonwealth v. Miller,* 787 A.2d 1036 (Pa.

---

12. The amendments to the registration requirements (Megan's Law III) which pertain to juvenile adjudications only require registration for those adjudicated delinquent "outside this Commonwealth," and required to be registered in that jurisdiction. 9795.2(b)(5).

Super. 2001), is similarly misplaced. In that case, the defendant, an adult, was convicted of an equivalent sexual offense in Hawaii. He moved to Pennsylvania and was required to register under 9795.2(b)(1), even though the acts in Hawaii occurred before the effective date of Megan's Law. Finding no error, the registration requirements were not deemed punitive, but instead, remedial. See *Commonwealth v. Gaffney,* 557 Pa. 327, 338-39, 733 A.2d 616, 622 (1999). Here, the defendant is being prosecuted for failing to register. His prior juvenile adjudication is an element of the offense. It cannot be seriously entertained that this is a remedial registration requirement. Instead, it is a crime with punitive consequences. See *Commonwealth v. Williams,* 574 Pa. 487, 521-26, 832 A.2d 962, 982-85 (2003) (penalty provisions of Megan's Law II contain "punitive measures," in contrast to registration, notification and counseling requirements which were "not sufficiently onerous to qualify as punishment."); see also, *Commonwealth v. Wall,* 867 A.2d 578 (Pa. Super. 2005) (fines as punishment).

A review of the Megan's Law amendments does not provide any indication that the legislature intended the penalty provisions for those adjudicated delinquent to be applied retroactively. "It is black letter law that a statute cannot be applied retroactively absent the legislature's clear intent that retroactivity is appropriate." *Commonwealth v. Estman,* 2005 WL 293779 (Pa. Super. 2005). Even if some retroactive implications exist, those amendments could not apply to someone who has completed his sentence in New Jersey. *Commonwealth v. Richardson,* 784 A.2d 126, 130 (Pa. Super. 2001), *appeal denied,* 568 Pa. 630, 793 A.2d 907 (2002) (provisions in Megan's Law requiring probationers and parol-

ees to register could not be applied to an individual whose sentence had expired although still in custody).

"The legislature is free to criminalize previously non-criminal conduct." *Commonwealth v. Pickett,* 244 Pa. Super. 433, 439, 368 A.2d 799, 802 (1976). The Commonwealth, on the other hand, cannot criminalize conduct based upon a desired expansion or interpretation of a statute due to particular facts and circumstances. Even if they anticipated the legislative amendments, it is not their function to criminalize conduct.

For the foregoing reasons, the defendant's "Motion to quash criminal information" is granted.

## ORDER

And now, March 23, 2005, upon review of the defendant's "Motion to quash criminal information," and consideration of the arguments of counsel, as well as their memorandum of law;

It is hereby ordered that the motion is granted and the charges are dismissed.[1]

---

1. The legislature, effective January 24, 2005, amended 42 Pa.C.S. §9795.2(b) to include juvenile adjudications. This opinion is limited to the interpretation of the prior statute, which used the word "conviction," but not "juvenile adjudication."