602 A.2d 1308

**COMMONWEALTH of Pennsylvania**

v.

**Cameron R. KOCHER, Petitioner.**

Supreme Court of Pennsylvania.

Argued Jan. 17, 1991.

Decided Feb. 13, 1992.

Charles C. Hansford, James D. Crawford, Victor L. Streib, Cleveland, Ohio, pro hac vice, for petitioner.

Martha Bergmark, Hattiesburg, Miss., for amicus National Legal Aid and Defender Ass'n.

Lenore Gittis, Janet R. Fink, New York City, for amicus The Legal Aid Soc.

Charles P. Gelso, David McGlaughlin, Wilkes–Barre, Joseph L. Vullo, Philadelphia, for amicus Pennsylvania Assoc. of Crim. Defense Lawyers.

Mark Pazuhanich, Special Prosecutor, for respondent.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

The issue before us is whether the Court of Common Pleas abused its discretion in denying the petition of a nine-year old accused of murder to transfer his case to the juvenile court pursuant to Section 6322(a) of the Juvenile Act, 42 Pa.C.S. § 6322.

The facts of this case require recitation. On the morning of March 6, 1989, a snow holiday from school, Jessica Ann Carr was fatally shot while riding as a passenger on a snowmobile owned by Mr. and Mrs. Richard Ratti, neighbors of the petitioner. On that morning, petitioner had been playing Nintendo[1] at the Rattis' home but stopped

---

1. The trademark name of a computer video game.

playing when Mr. Ratti forbade the children to play because the children had made a mess in the kitchen. Some children, the victim included, started riding snowmobiles but the petitioner returned home. At some point after returning home the petitioner procured the key to his father's locked gun cabinet and removed a hunting rifle equipped with a scope. He loaded the weapon with ammunition, opened a window, removed the screen, and pointed the gun outside. The gun discharged, striking Jessica Ann Carr in the back and fatally wounding her. The scope of the rifle struck the petitioner's forehead and left a visible wound. He returned the rifle to the gun cabinet and hid the empty shell casing.

On March 8, 1989, the petitioner was arrested and charged with criminal homicide in the Court of Common Pleas of Monroe County. After being arraigned, he was released on bail to the custody of his parents.

Petitioner petitioned the court for transfer of the matter to juvenile court pursuant to Section 6322 of the Juvenile Act. The Commonwealth ordered a psychiatric evaluation of the petitioner. The Court of Common Pleas heard testimony on April 20 and 21 and May 25 and 26, 1989. Dr. Harris Rabinowich, a board certified child psychiatrist who had examined the petitioner at the state-ordered evaluation, testified on behalf of the Commonwealth. Psychiatrists Robert Sadoff, M.D., and Marsha Turnberg, M.D., and psychologist Robert G. Chupella, testified on behalf of the petitioner. On June 23, 1989, the Court of Common Pleas rejected petitioner's transfer request.

On July 29 and August 1, 1989, a preliminary hearing was held in which petitioner was bound over for trial on an open charge of criminal homicide, two counts of aggravated assault, and one count of recklessly endangering another person. Petitioner filed a Petition for Review of the Transfer Decision with the Superior Court of Pennsylvania which was denied. In the petition before this Court, petitioner raises six arguments. We need only address petitioner's argument that the lower court's construction of the Juve-

nile Act creates unreasonable criteria for the transfer of a juvenile from criminal court to juvenile court.[2] Because we remand the case for a determination of whether petitioner is amenable to treatment, supervision, and rehabilitation under the Juvenile Act, we need not address the other issues raised by petitioner.

In reviewing the exercise of discretion by the Court of Common Pleas, we are guided by precedent which established that

> [a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Moyer,* 497 Pa. 643, 647, 444 A.2d 101, 103 (1982). Applying this test to the instant case, we hold that the trial court abused its discretion when applying the criteria under Section 6355 of the Juvenile Act.

Under the Juvenile Act of Pennsylvania, 42 Pa.C.S. § 6301 *et seq.,* an allegation of murder automatically removes the proceedings from the jurisdiction of the juvenile court. See 42 Pa.C.S. § 6302 (definition of "delinquent act").[3] In the past, murder was considered a crime so

**2.** The other arguments raised by petitioner are:

　a.　The public policy of the Commonwealth of Pennsylvania and of the United States opposes nine year old children being criminally prosecuted for murder.

　b.　Murder requires a malicious intent which is a uniquely mature, adult moral and mental state not achievable by nine year olds.

　c.　In establishing a minimum age of ten for delinquency jurisdiction in Juvenile Court, the Pennsylvania Juvenile Act reflects an implicit legislative intent to establish a minimum age of ten for murder jurisdiction in Criminal Court.

　d.　Subjecting a nine year old to the most severe of adult punishments resulting from a criminal court conviction of murder would be cruel and unusual punishment under the constitutions of Pennsylvania and the United States.

　e.　The decision of the lower court is not supported by the record. Petitioner's Brief, Table of Contents.

**3.**　"Delinquent Act."

heinous that it could not be considered in juvenile court, and the adult criminal court would have *no* discretion to transfer a case alleging murder to the juvenile court. *See Commonwealth v. Pyle*, 462 Pa. 613, 618, 342 A.2d 101, 104 (1975). The statute was amended to grant the criminal court the discretion to determine whether the juvenile charged with murder would be amenable to treatment, supervision, and rehabilitation under the juvenile system and, therefore, could be tried in juvenile court. *Id.*, 462 Pa. at 619, 342 A.2d at 104; *see* 11 P.S. § 50–303 (1972) repealed and reenacted at 42 Pa.C.S. § 6322 (1983). After the Legislature amended the Juvenile Act to allow a juvenile charged with murder to be transferred to juvenile court, this Court held in *Commonwealth v. Pyle*, the first case to reach the Supreme Court of Pennsylvania involving the discretionary transfer of a murder case to juvenile court, that Subsection 28(a) of the Juvenile Act, (regarding transfer of juveniles to adult criminal court), provided the proper criteria for the criminal court to use when considering a petition for transfer of a murder case to juvenile court. 462 Pa. 613, 342 A.2d 101 (1975).[4] In *Pyle*, we affirmed the trial court's

(1) The term means an act designated a crime under the laws of this Commonwealth, or of another state if the act occurred in that state, or under Federal law, or under local ordinances.
(2) The term shall not include:
(i) the crime of murder.
42 Pa.C.S. § 6302.

**4.** In *Pyle*, this Court held that "[s]ince Subsection 28(a) is the only expression of legislative intent directed to the transfer question and since like purposes are served by a Subsection 28(a) transfer and retention of jurisdiction under Section 7, we believe that consideration of Section 28(a) is necessary here." *Commonwealth v. Pyle*, 462 Pa. 613, 621, 342 A.2d 101, 105 (1975). Section 28(a), at 11 P.S. § 50–335, was repealed and reenacted at 42 Pa.C.S. § 6355. 42 Pa.C.S. Disposition Table; *see Commonwealth v. Pettus*, 492 Pa. 558, 562 n. 2, 424 A.2d 1332, 1334 n. 2 (1981). Subsection 28(a) provided that

(a) [a]fter a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this State, the court before hearing the petition on its merits may rule that this act is not applicable and that the offense should be prosecuted, and transfer the offense where appropriate, to the trial or criminal division or to

denial of a juvenile petition to transfer his murder case from the Court of Common Pleas to juvenile court, and held that the burden was on the juvenile to prove he was amenable to treatment under the juvenile system. *Id.* In *Commonwealth v. Romeri*, this Court upheld the trial court's decision not to transfer a juvenile murder case to juvenile court. 504 Pa. 124, 138–39, 470 A.2d 498, 505 (1983). In that decision we relied on our earlier decision in *Pyle. Id.*, 504 Pa. at 137–138, 470 A.2d at 505. In 1986, the legislature amended Section 6322(a) to specify the criteria to be weighed by the criminal court.[5] The legislature, reflecting the belief that murder still required special treatment (*i.e.*, exclusion) under the juvenile system, placed the burden on the child to persuade the court that the child was

> a judge of the court assigned to conduct criminal proceedings, for prosecution of the offense if:
> (1) The child was fourteen or more years of age at the time of the alleged conduct; and
> (2) A hearing on whether the transfer should be made is held in conformity with this act; and
> (3) Notice in writing of the time, place and purpose of the hearing is given to the child his parents, guardian, or other custodian at least three days before the hearing; and
> (4) The court finds that there is a prima facie case that the child committed the delinquent act alleged, and the court finds that there are reasonable grounds to believe that: (i) the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, in determining this the court may consider age, mental capacity, maturity, previous record and probation or institutional reports; (ii) the child is not committable to an institution for the mentally retarded or mentally ill; and (iii) the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult.

5. Section 6322(a) provides that
> [i]f it appears to the court in a criminal proceeding charging murder, that the defendant is a child, the case may similarly be transferred and the provisions of this chapter applied. In determining whether to transfer a case charging murder, the court shall apply the criteria in section 6355(a)(4)(iii)(A) (relating to transfer to criminal proceedings). *However, the child shall be required to show the court that the child is amenable to treatment, supervision or rehabilitation as a juvenile by meeting the criteria listed in section 6355(a)(4)(iii)(A).*
42 Pa.C.S. § 6322(a) (emphasis added).

amenable to treatment under the juvenile system. *See supra* note 4; *Pyle,* 462 Pa. at 623, 342 A.2d at 106.

The factors to be considered by the criminal court for transfer are delineated in the following section of the Pennsylvania Juvenile Act:

## § 6355. Transfer of criminal proceedings
### (a) General Rule

\* \* \* \* \* \*

(4) The court finds:

\* \* \* \* \* \*

(iii) that there are reasonable grounds to believe all the following:

(A) that the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, even though there may not have been a prior adjudication of delinquency. In determining this the court shall consider the following factors:

Age.

Mental capacity.

Maturity.

The degree of criminal sophistication exhibited by the child.

Previous records, if any.

The nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the Juvenile Court to rehabilitate the child.

Whether the child can be rehabilitated prior to the expiration of the Juvenile Court jurisdiction.

Probation or institutional reports, if any.

Any other relevant factor.

42 Pa.C.S. § 6355.[6] The trial court applied these criteria to the facts of the case. We are here called upon to assess the court's application of these provisions.

---

6. Clauses (B) and (C) were not included in the amended Section 6322(a) criteria. They provide

(B) [t]hat the child is not committable to an institution for the mentally retarded or mentally ill [and]

The Court of Common Pleas found Cameron Kocher to be a normal fourth grader of above-average intelligence with an above-average school record. He was a good student who exhibited occasional inattentiveness. He related well to others in his school, community, and church, and he possessed an average level of maturity and physical development. His home life was stable, close-knit, and supportive. The child exhibited no physical, mental, emotional, or behavioral disorders and had no previous criminal or delinquent history. The trial court considered these factors favorable to his application for transfer.

Conversely, the trial court's analysis of the nature of the crime and the level of criminal sophistication weighed against the petitioner's petition for transfer. When he fired the rifle, he endangered the driver of the snowmobile and the other children playing in the area. His manipulation of the gun and the window, and his dishonesty about the cut on his forehead to his parents and police reflected an adult level of criminal sophistication and knowledge. He appeared to show no remorse for the crime. The petitioner was quoted as saying, "If you don't think about it, you won't be sad," to one of the neighbors' children as the victim lay dying in the Rattis' home. These factors weighed heavily against the petitioner's petition for transfer.

The trial court addressed the issue of the petitioner's capacity to commit the crime in four distinct contexts: first, the overall mental capacity under Section 6355(a)(4)(iii)(A); second, the common law rebuttable presumption that children between the ages of 7 and 14 are not capable of forming the requisite criminal intent to commit a crime; third, the capacity of the child to stand trial competently;

(C) [t]hat the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult.

42 Pa.C.S. § 6355(a)(4)(iii)(B) and (C). Clauses (B) and (C) were originally contained in Section 28(a) of the Juvenile Act and were considered by this Court in *Pyle* as two of the criteria to weigh in a transfer petition. *See supra* note 4.

and fourth, the petitioner's capability of forming the specific intent to commit murder.

Dr. Rabinowich, a witness for the Commonwealth, testified that the child had the capacity to commit crime, and moreover, specifically to commit murder. He also opined that the petitioner was competent to stand trial. The other doctors all testified that petitioner was "blocking" the causal connection between his actions and the victim's death.

Dr. Sadoff, for the defense, testified that he was not able to render an opinion on whether the petitioner could form the intent to kill. Drs. Chupella and Turnberg testified that petitioner could not. The trial court heard the testimony and ruled that Cameron Kocher was competent to stand trial as an adult, and capable of forming the intent to kill.

The court did not specifically address the common law presumption that children under the age of 14 are not capable of forming the criminal intent necessary to commit a crime. *See Commonwealth v. Durham*, 255 Pa.Super. 539, 389 A.2d 108 (1978). Nonetheless, the court held that petitioner was capable of forming the intent to commit murder.

The Court of Common Pleas then addressed the petitioner's claim that he was amenable to treatment, supervision, and rehabilitation in the juvenile system because he was suffering from an anxiety disorder. The Court of Common Pleas found no merit in that argument. It held that the evidence was clear that the shooting caused the disorder (not vice versa) and that the petitioner was free from any disorder or defect at the time of the shooting. The court stated that if a disease, defect or disorder caused the underlying actions, only then would the child be amenable to treatment, supervision, and rehabilitation under the juvenile system. Conversely, it held that if the shooting was not caused by a defect or disorder, the case would not be transferred. The trial judge stated,

[I]n short, we believe that there must be some underlying disease or disorder which is causally connected to the homicide in order for transfer to be justified under cur-

rent law. Thus, since the [petitioner] did not suffer from any defect or impairment at or before the time of the shooting, he has failed to show that he is amenable to treatment, supervision or rehabilitation within the meaning of the law regarding transfer.

*Commonwealth v. Kocher,* No. 180 slip op. at 39–40 (Court of Common Pleas of Monroe County, June 23, 1989).

Petitioner argues that the Court of Common Pleas erroneously required him to prove that a mental disease or defect caused the killing in order to demonstrate that he is amenable to treatment, supervision, and rehabilitation under the juvenile system. We agree with the petitioner.

In its analysis of the transfer provision of the Juvenile Act, the Court of Common Pleas determined that no child may be transferred from adult criminal court to juvenile proceedings unless he suffers from some disorder or defect which caused the child to commit the murder. Restated, the court held that a mental defect or disorder must cause the criminal action. That requirement contravenes the legislative intent of the amendments to the Juvenile Act that allow transfer of a murder case from criminal to juvenile proceedings. *See* 42 Pa.C.S. § 6322(a).[7] The plain language of the Juvenile Act requires the court to determine that the child is "amenable to treatment, supervision or rehabilitation as a juvenile through available facilities.... In determining this, the court shall consider [several] factors...." 42 Pa.C.S. § 6355(a)(4)(iii)(A). The trial court's interpretation of the Juvenile Act precludes the weighing of any factors to determine amenability once the court establishes that no disease or defect caused the killing. This contradicts Sections 6355 and 6322, most recently amended in 1986, which allow the child to prove amenability and proscribe the standards to be used in making that determination as those in Section 6355(a)(4)(iii)(A). This particular clause contains no reference to a mental disease or defect.

7. See *supra* note 5 for the text of the statute.

This Court's prior holdings which discussed mental retardation in the context of the transfer of murder trials to juvenile court referred not to the amended Section 6322 but instead to the original Section 6322, which did not specify clause (A). *See, e.g., Commonwealth v. Williams*, 514 Pa. 62, 522 A.2d 1058 (1987); *Commonwealth v. Sourbeer*, 492 Pa. 17, 422 A.2d 116 (1980); *Commonwealth v. Wade*, 485 Pa. 453, 402 A.2d 1360 (1979); *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975).

In *Commonwealth v. Leatherbury*, 390 Pa.Super. 558, 568 A.2d 1313 (1990), the Superior Court affirmed the Court of Common Pleas' denial of a transfer petition to juvenile court, and cited the amended statute, 42 Pa.C.S. § 6322(a), listing the factors to be weighed. *Id.*, 390 Pa.Superior Ct. at 561, 568 A.2d at 1314–15. The "lower court *noted* that there was an absence of evidence that petitioner suffered from any mental disabilities," but did not rest its decision to deny transfer upon that absence alone. *Id.*, 390 Pa.Superior Ct. at 562, 568 A.2d at 1316 (emphasis added).

The Commonwealth argues that the amendments to section 6322 codified the holding of *Commonwealth v. Pyle*. However, in *Pyle*, the Court had to determine whether, *inter alia*,

> (ii) the child was not committable to an institution for the mentally retarded or mentally ill, and (iii) the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed by an adult.

*Pyle*, 462 Pa. at 619 n. 5, 342 A.2d at 104 n. 5 (citing 11 P.S. § 50–325(a), repealed and recodified at 42 Pa.C.S. § 6355(a)(4)(iii)). Those two elements are codified at Title 42, Section 6355(a)(4)(iii)(B) and (C) and are excluded from the criteria listed in the amended version of Section 6322(a). Thus, the Commonwealth is incorrect in its characterization of Section 6222(a) as a codification of our decision in *Pyle*.

Moreover, Section 6355(a)(4)(iii)(B) specifically refers to mental retardation or illness.[8] This section's proximity to Section 6355(a)(4)(iii)(A) and its exclusion from Section 6322(a) suggest that the legislature did not intend to require that a mental disease or defect caused the killing in order to warrant transfer to Juvenile Court.

In *Commonwealth v. Pyle,* we noted that

> [u]nder the former Juvenile Court law ... there is no allowance for transfer in cases of murder. Once a *prima facie* case of felonious homicide was made out, the lower court judge had no alternative but to hold the juvenile for further proceeding in the criminal courts.... Now under the new statute, the determination of whether the interests of state and society require prosecution or murder on an indictment is within *the sound discretion* of the Common Pleas Court.

*Commonwealth v. Pyle,* 462 Pa. at 619, 342 A.2d at 104 (citation omitted) (emphasis in original). Accordingly, we upheld the trial court's use of the factors now codified at Title 42, Section 6355(a)(4)(iii)(A), (B), and (C), in exercising its discretion whether to transfer a murder case from juvenile court. Since that decision, the Legislature has amended the Juvenile Act to enumerate the criteria with which to exercise that discretion, removing clauses (B) and (C) from consideration by the trial court. *See* 42 Pa.C.S. § 6322(a). The result of the holding below would be that once a *prima facie* case of first degree felonious homicide is made out, and no insanity defense is available to excuse the homicide or reduce the charge, then the court will have no discretion but to hold the case for trial in the criminal court. Such a result is patently inconsistent with Sections 6322 and 6355 of the Juvenile Act.

Our holding does not prohibit discussion of the juvenile's mental state both at the time of the killing and at the time of the transfer petition. Section 6355 allows for consideration of "any other relevant factors." 42 Pa.C.S. § 6355(a)(4)(iii)(A). The factors delineated in Section

---

**8.** See *supra* note 6 for text of section 6355(a)(4)(iii)(B).

6355(a)(4)(iii)(A) look back to the time of the murder, (*e.g.,* "the nature and circumstance of the act for which the transfer is sought"), look presently at the time of the petition, (*e.g.,* "maturity, mental capacity, including competence to stand trial"), and look forward to the period of rehabilitation, (*e.g.,* "whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction"); therefore, an examination of behavioral or mental diseases or disorders should include both the state of mind at the time of the murder, and the state of mind at the time of the transfer petition. *See* 42 Pa.C.S. § 6355(a)(4)(iii)(A).

The Court of Common Pleas in its discretion may find that a behavioral disorder is a factor to be considered in determining whether the child is amenable to treatment now; it may also find that a sound mind devoid of any disease or defect at the time of the murder is a factor weighing against transfer of the case to juvenile court. But to find that a lack of mental disorder is dispositive of the entire amenability question is to distort the clear legislative scheme. We therefore hold that the Court of Common Pleas abused its discretion in its denial of petitioner's petition for transfer.

Accordingly, the Order of the Court of Common Pleas is vacated and the matter is remanded for proceedings consistent with this opinion.

FLAHERTY, J., files a concurring opinion in which CAPPY, J., joins.

PAPADAKOS, J., files a concurring opinion.

LARSEN, J., files a dissenting opinion.

FLAHERTY, Justice, concurring.

I join the well reasoned opinion of the majority, but would go further and express that the public policy of Pennsylvania does not allow the criminal prosecution of a nine year

old child for murder. That it was attempted in this instance shocks my conscience.

CAPPY, J., joins this concurring opinion.

PAPADAKOS, Justice, concurring.

It is an understatement to say that this is a difficult case. But it has also often been said that hard cases make bad law. The Chief Justice has written for the majority in a dispassionate way, highlighting the law as expressed by the legislature, and I join in that opinion. Some of our colleagues, however, cry for the recognition of a public policy that children of the age of nine years and under (how about 10 or 11 or 12 years of age, etc.?) must not be treated as murderers and must not be tried as murderers under any circumstances. Perhaps they are right. But that is a matter better left to the Legislature.

It seems to me that the concurring justices are engaging in oxymoronic dialogue in this case because they do not really agree with the majority opinion or its rationale. On the one hand, they say that a nine-year-old killer should not be tried as an adult killer, yet, on the other hand, by joining the majority opinion they accept the fact as proved by the murderer's own statements and the opinions of the doctors who examined him that he knew exactly what he was doing and they are content to remand to the trial judge to determine in a proper analysis whether this child should be treated as a juvenile or an adult.

The Chief Justice, in the absence of a public policy statement by us or the legislature, concludes for the majority that this matter be remanded to the trial judge to determine, within the parameters of the Juvenile Act, whether this nine year old is amenable to treatment, supervision and rehabilitation. But if the propriety of trying a nine year old for murder is in doubt then why waste everyone's time by a remand which will only raise more questions. What happens if the trial judge properly concludes that this nine year old is not amenable to treatment,

supervision and rehabilitation? Do we then try him as an adult for murder of the first degree? And if he is convicted, do we give him the death penalty or mandatory life imprisonment and keep him incarcerated for the next 50, 60 or 70 years or more?

I do not agree with the concurring justices in their attempt to legislate in this matter in the guise of expounding public policy. The law is presently clear and we must apply it. If public policy should be otherwise, then let the legislature come to grips with the problem and change the statute.

LARSEN, Justice, dissenting.

I vigorously and emphatically dissent. The trial judge herein was eminently correct in his interpretation and application of the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6365, and made a courageous decision that, no doubt, flies in the face of the view taken of the issue by many citizens of this Commonwealth. Whether or not we *personally* find it "shocking" to try a nine year old child on a charge of murder in criminal court, this Court does not have the authority to rewrite a statute duly enacted by the Legislature.

Mr. Justice Flaherty, in his concurring opinion, states that it is not the public policy of this Commonwealth to criminally prosecute nine year old children for murder. This is simply not true. Murder is a heinous crime, and the Legislature is unquestionably cognizant of this fact. *All* crimes and *all* criminals were tried in "adult" criminal courts prior to the enactment of legislation early in this century requiring the special treatment of juveniles in our courts. There were no juvenile courts until the Legislature created juvenile courts. When the Legislature did so, it explicitly excluded murder from the jurisdiction of the juvenile courts but gave juveniles charged with murder the opportunity to transfer their cases from criminal court to juvenile court if certain prescribed conditions were met. Children were *always* subject to the jurisdiction of the criminal courts of this

Commonwealth if they committed murder; in this respect, the law has not changed.

This nine year old defendant is not an innocent victim of the tragic instances of accidental shootings occurring in homes where firearms are handled carelessly. He had been repeatedly instructed in the safe handling of firearms, he had shot a rifle while at a gun club to which his parents belonged, and he had gone hunting with his father. The as yet uncontested evidence presented at the hearings on his petition for transfer show that the petitioner, Cameron R. Kocher, in an ill temper, took a key from where it was hidden in the base of a lamp, unlocked a gun cabinet, loaded the proper ammunition into a .35 caliber rifle equipped with a scope, unlocked a bedroom window, removed a screen from the window, and aimed the rifle at a seven year old girl, the daughter of two loving parents, as she played, blissfully unaware of the fate about to befall her, with other children in the snow. The rifle, which was in excellent working condition, had a heavy trigger pull and could not accidently discharge under normal circumstances.

The victim, whom the majority seems to forget ever existed, was killed by a bullet deliberately aimed and shot through her back, as she was riding as a passenger on a snowmobile. The bullet pierced her spine and right lung; she collapsed instantly, like a game animal shot by a skilled and experienced hunter, and died on the operating table a short time thereafter. The petitioner carefully returned the rifle to the gun cabinet and hid the empty shell casing. When he returned to his neighbor's residence where the victim had been taken after the shooting, he exhibited no emotion on viewing her moribund body and proceeded to play Nintendo as if nothing were amiss. Further, the petitioner, who had received a gash in his forehead when the gun recoiled and the scope struck him, lied about the cause of the gash to his neighbors, his parents and the police. We are not dealing with a guileless boy here and a victimless crime. We do know for certain that an innocent

life has been snuffed out with a bullet in the back, delivered by careful aim and followed by a well thought-out cover-up.

The trial court meticulously reviewed and discussed the evidence in light of *every* statutory factor and found that petitioner had proven few factors in favor of granting the transfer request. The petitioner's lack of previous misconduct and his age at the time of the offense were the only factors viewed in petitioner's favor. Significantly, age is only *one* statutory factor that the Legislature permits the courts to consider under section 6322(a) of the Juvenile Act.

Only after the trial court had considered all of the statutory factors, did the trial court consider petitioner's argument that he was suffering from an anxiety disorder that was amenable to treatment as a juvenile. It was solely in response to this assertion that the trial court discussed the meaning and interpretation of the "amenable to treatment" language of section 6355(a)(4)(iii)(A), and concluded that the Legislature could not have intended for defects or disorders arising *after* the commission of the offense to justify a transfer request. The majority herein errs in reading the trial court's opinion as setting forth an absolute criterion for transfer that overrides every other statutory factor, and, indeed, the majority is plain wrong when it implies that the trial court ignored the statutory factors.

Accordingly, I dissent and would affirm the decision of the Court of Common Pleas of Monroe County. Questions about the petitioner's competency to stand trial, capacity to form criminal intent, and possible dispositions in the event of a guilty verdict are all properly matters within the jurisdiction of the *criminal* court where the Legislature has, in its wisdom, bestowed jurisdiction.