787 A.2d 1040 (2001)
In re: N.E.
Appeal of: Philadelphia Department of Human Services.
Superior Court of Pennsylvania.
Argued October 30, 2001.
Filed December 6, 2001.
*1041 Roxanne E. Covington, Philadelphia, for appellant.
Perry E. Beitchman, Philadelphia, for appellee.
Before: McEWEN, President Judge Emeritus, CERCONE, President Judge Emeritus, and BECK, J.
CERCONE, President Judge Emeritus.
¶ 1 Appellant, the Philadelphia Department of Human Services (DHS), appeals from the Trial Court order of January 4, 2001 in which DHS was ordered to pay a portion of the child, N.E.'s, dental bills.[1] We affirm.
¶ 2 On May 17, 2000, N.E.'s mother signed a voluntary placement agreement which resulted in the Trial Court temporarily committing N.E. to DHS and placing the child at Sleighton School as a dependent. DHS was directed to file a dependency petition, and it complied. On July 12, 2000, N.E. was adjudicated dependent and committed to DHS. N.E. remained at Sleighton School until December 15, 2000, at which time she returned to her mother's residence. In the time between N.E.'s return home on December 15, 2000 and a permanency hearing scheduled for January 4, 2001, N.E. fell and injured her teeth, and now requires "extensive dental treatment." Trial Court Opinion, filed 4/24/01, at 1. At the permanency hearing on January 4, 2001, the Trial Court ordered that N.E. be returned to her mother, terminated N.E.'s commitment retroactive to December 15, 2000, ordered DHS supervision of N.E. at home, and ordered DHS to pay "any specified amount that is not covered by [mother's] insurance as to *1042 [N.E.'s] dental needs due to [her] fall." Trial Court Order, dated 1/4/01. On February 2, 2001, DHS filed a notice of appeal. The Trial Court ordered DHS to file a statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b), and DHS complied on February 29, 2001.
¶ 3 DHS presents one question for our review:
Did the trial court abuse its discretion in ordering the Philadelphia Department of Human Services to pay an unspecified amount of the child's medical/dental expenses where the child in question is not committed to the Philadelphia Department of Human Services and where there is evidence that the child's mother is gainfully employed with health/dental insurance to cover the child's procedures?
DHS Brief at 7. In reviewing this matter we must determine whether the Trial Court abused its discretion. See In re Tameka M., 525 Pa. 348, 580 A.2d 750 (1990). Our Supreme Court has explained that an abuse of discretion is not merely an error of judgment. Commonwealth v. Kocher, 529 Pa. 303, 306, 602 A.2d 1308, 1310 (1992). An appellate court may only find an abuse of discretion "if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence ...." Id.
¶ 4 DHS argues that it is not responsible to pay N.E.'s dental bills, because N.E. is no longer committed to DHS. According to the certified record, N.E. was adjudicated dependent on July 12, 2000 and committed to DHS. N.E. was permitted to move back to her mother's residence on December 15, 2000. The Trial Court order of January 4, 2001 terminated N.E.'s placement outside the home and placed N.E. with her mother, retroactive to December 15, 2000. DHS was ordered to continue to supervise N.E. while she was living with her mother. Pursuant to section 6351 of the Juvenile Act,[2] the trial court may place a dependent child with his or her parents, subject to conditions imposed by the court which may include supervision by the county children and youth agency. 42 Pa.C.S.A. § 6351(a)(1).[3] After moving home, N.E. was still considered a dependent child and was subject to the supervision of DHS. See 42 Pa.C.S.A. § 6302 (defining protective supervision as "supervision ordered by the court of children found to be dependent"). The purpose of the Juvenile Act is, inter alia, "to provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions" of the Juvenile Act. 42 Pa.C.S.A. § 6301(b)(1.1). Hence, under the Juvenile Act, DHS was responsible for providing care for N.E., a dependent child.
¶ 5 DHS also argues that there is no mandate that "services" which must be provided for a dependent child include direct payment for services as opposed to "assisting families and children by providing or linking them to programs and other *1043 training designed to meet their needs." DHS Brief at 12. Pursuant to the Child Protective Services Law (CPSL),[4] a county children and youth agency, here DHS, is responsible for providing "general protective services" to children which is consistent with the agency's objectives, one of which is to "provide services and care ordered by the court for children who have been adjudicated dependent." 23 Pa. C.S.A. § 6373(a)(7). General protective services are defined as "those services and activities provided by each county agency for nonabuse cases requiring protective services, as defined by the Department of Public Welfare in regulations." 23 Pa. C.S.A. § 6303.
¶ 6 The Department of Public Welfare regulations are found in the Public Welfare Code which is located in Title 55 of the Pennsylvania Administrative Code. In its definition of children and youth social services, section 3130.5 of the Public Welfare Code includes "court-ordered care or supervision to alleged or adjudicated dependent or delinquent children." 55 Pa. Code § 3130.5. Section 3130.12, regarding services which are the responsibility of the county children and youth agency, provides that the agency is responsible for administering services that include "service and care ordered by the court for children who have been adjudicated dependent or delinquent." 55 Pa.Code § 3130.12(c)(5). N.E., then, is entitled to court-ordered care and services under both of these provisions, because N.E. is a dependent child.
¶ 7 Sections 3130.34 and 3130.38 of the Public Welfare Code also provide that the county agency is responsible to provide services ordered by the court under the Juvenile Act. Section 3130.34 specifically contemplates orders of court made pursuant to section 6351 of the Juvenile Act (regarding disposition or placement of dependent child), and cites In re Lowry, 506 Pa. 121, 484 A.2d 383 (1984), in which the Allegheny County Children and Youth Services Agency (CYS) was ordered to fund the placement of a dependent child in a nonapproved foster home even though CYS would not be eligible for reimbursement from the Department of Public Welfare. The CPSL, then, pursuant to the regulations of the Public Welfare Code requires a children and youth agency, here DHS, to provide any services ordered by the court for the care of a dependent child.
¶ 8 Both parties in this case argue the applicability of In re Tameka M., supra, to their arguments. Tameka M. was adjudicated dependent and placed in foster care. Because of her self-abusive tendencies, Tameka M.'s foster parents were given permission by CYS to send her to a special pre-school for which CYS would be reimbursed by the Department of Public Welfare. After weeks at the new pre-school, Tameka M.'s behavior became worse and her foster parents sought permission to enroll her in a Montessori school which would provide a more structured environment. CYS allowed the enrollment, but would not pay for it because CYS would not be reimbursed by the Department of Public Welfare for that school. The child's behavior improved at the Montessori school. The trial court ordered CYS to reimburse the foster parents for Tameka M.'s tuition at the Montessori school, because her enrollment there was in Tameka M.'s best interest.
¶ 9 CYS appealed, and the Superior Court affirmed the trial court's decision, holding that the trial court had the authority under 42 Pa.C.S.A. § 6351 to "exercise continuing independent and original supervision of a dependent child and to order a public agency which has been given supervision of the child to pay for a treatment *1044 plan which the court found to be in the child's best interest." Id. at 351, 580 A.2d at 752. After review, the Supreme Court affirmed. The Supreme Court held that "the Juvenile Court maintains a continuing plenary jurisdiction in dependency cases under 42 Pa.C.S.A. § 6351 ... and has the power to review the circumstances of dependent juveniles ...." Id. at 352, 580 A.2d at 752. The Supreme Court concluded that "CYS has the duty to give financial support to dependent children, and Juvenile Court has the duty to act to provide for the `protection and physical, mental and moral welfare' of a dependent child. This bestows on a dependent child the legal right to such care and treatment to be paid for by CYS." Id. at 357, 580 A.2d at 755. "The juvenile courts have a tradition of acting in loco parentis and they are particularly well suited to order relief that is treatment oriented. Treatment is the entire premise underlying the juvenile court system. Tameka M. has a right to life guaranteed by the Constitution and a right to adequate care and treatment under the laws of Pennsylvania." Id. at 358, 580 A.2d at 755.
¶ 10 We see no distinction between Tameka M. and the case sub judice. A dispositional order was issued by the Trial Court ordering placement of N.E. with her mother. It is immaterial that in Tameka M., the child was placed with a foster family, as both children were dependent and both were placed by the trial court, pursuant to 42 Pa.C.S.A. § 6351 with the child's best interest in mind. Subsequent to placement, the Trial Court exercised its continuing discretion in the best interest of the child by ordering DHS to pay for any amount which was owed for N.E.'s dental care after her mother's insurance had paid its portion.[5] As held in Tameka M., DHS has a duty to provide financial support and a duty to provide for N.E.'s physical welfare. See Tameka M., supra at 357, 580 A.2d at 755. N.E. has the right to have DHS pay for her unreimbursed dental expenses. Id. Accordingly, we hold that the Trial Court did not abuse its discretion in ordering DHS to pay the unreimbursed dental expenses resulting from the injuries sustained by N.E. when she fell.
¶ 11 Order affirmed. Jurisdiction relinquished.
¶ 12 BECK, J., files dissenting opinion.
BECK, J., Dissenting.
¶ 1 I respectfully dissent. The majority concludes that because the court ordered DHS to continue to supervise N.E. at the January 4, 2001 hearing, an order made retroactive to December 15, 2000, that the court was therefore continuing N.E.'s status as a dependent child. I disagree. The order in question specifically states that N.E.'s commitment to DHS is discharged as of December 15, 2000, she is to be permanently placed with her mother, and DHS is to supervise. This order resulted from the permanency hearing. The order clearly means that N.E. was no longer a dependent child. After the court discharged N.E. from her status as a dependent child, the court no longer had jurisdiction to order DHS to pay for her uninsured dental expenses.
¶ 2 If N.E. was to be returned to dependent status after the permanency hearing, a new petition and hearing would be required. Unlike the majority, which sees no distinction between the instant case and In re Tameka M., 525 Pa. 348, 580 A.2d 750 (1990), I find a clear distinction. There, the child was unquestionably still in dependent status at the time of the court's order and therefore entitled to support from the county agency for the therapeutic *1045 program offered by the Montessori program.
¶ 3 In addition to my understanding that the court's order ended N.E.'s dependent status, and therefore her entitlement to DHS payment for uninsured dental services, I write to express a concern that the majority's position may have an unfavorable result upon future DHS policy. If DHS is required to expend its limited resources for the uninsured needs of a formerly dependent child who has been returned to parental care (in those instances where it continues to supervise the child), DHS may choose to end dependency without agency supervision, and therefore without financial exposure for unanticipated expenses. Such a result would not be in the best interest of the child, the standard that must govern these determinations. As one of the concurring opinions in Tameka emphasized, "the decision here [to pay for the Montessori tuition] should not be interpreted as authorizing ... judges to order payment for `non-funded' services in routine placement situations." Tameka, at 756.
¶ 4 I would therefore reverse the order of the trial court.
NOTES
[1] This appeal is properly before us pursuant to Pa.R.A.P. 313 which provides as follows: "An appeal may be taken as of right from a collateral order of an administrative agency or lower court." Pa.R.A.P. 313(a). Similar orders have been addressed on appeal by our Court. See In re Tameka M., 368 Pa.Super. 525, 534 A.2d 782 (1987) (CYS appealed order to pay for dependent child's enrollment in special pre-school).
[2] 42 Pa.C.S.A. §§ 6301-6365. The provisions of the Juvenile Act apply to proceedings which involve dependent children. Id. at § 6303(a)(1).
[3] § 6351 Disposition of dependent child

(a) General ruleIf the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the protection and physical, mental, and moral welfare of the child:
(1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.
[4] 23 Pa.C.S.A. §§ 6301-6385.
[5] DHS agrees that dental care is in N.E.'s best interest. DHS Brief at 11.