J-A21029-24

2025 PA Super 22

| | | |
|---|---|---|
| IN THE INTEREST OF: S.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: CHESTER COUNTY DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1358 EDA 2024 |

Appeal from the Order Entered April 8, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
CP-15-DP-0000032-2022

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

OPINION BY NICHOLS, J.:                    **FILED JANUARY 28, 2025**

Appellant Chester County Department of Children, Youth and Families (Agency) appeals from the trial court's order determining that S.K. was in placement prior to her eighteenth birthday.  We affirm.

The trial court summarized the facts and procedural history of this appeal as follows:

On August 9, 2022, then Petitioner [A.M.] filed an application for leave to file a private dependency petition pursuant to Pa.R.J.C.P. 1321 and 1330.  [Therein, A.M. alleged that she is the adult sister of S.K., and that S.K. was residing with her.  A.M. asserted that Maternal Grandmother had legal custody of S.K., but S.K. had left Maternal Grandmother's home because she did not feel safe after Maternal Grandmother had a mental health crisis.  A.M. sought custody of S.K. and to "become a kinship foster care resource for" S.K.]  On August 10, 2022, a hearing was scheduled before Hearing Officer [Mary] Jones on August 17, 2022.  On August 17, 2022, [Agency] filed a motion to intervene and to transfer venue to Delaware County.  It is unclear whether Hearing Officer Jones ruled on [Agency's] motion and permitted [Agency's] involvement in that hearing, as her August 17, 2022 recommended order

submitted to [the trial] court stated only that there were sufficient facts alleged to support a petition of dependency, Petitioner [A.M.] was a proper party, the petition of dependency may move forward, and [Agency] was joined as a party. On August 17, 2022, [the trial] court entered the recommended order. On August 23, 20[2]2, [A.M.] filed the private dependency petition . . . .

At the September 8, 2022 adjudication hearing, Hearing Officer Jones orally placed her findings on the record, which included a finding that clear and convincing evidence existed to substantiate the allegations in the petition that S.K. was without proper care or control. Hearing Officer Jones removed S.K. from the home of her Maternal Grandmother, . . . and temporarily transferred legal and physical custody to Guardian [A.M.]. Hearing Officer Jones further ordered [Agency] to perform a home study of [A.M.'s] residence. A dispositional hearing was scheduled for September 20, 2022.

On September 16, 2022, [Agency] filed a *nunc pro tunc* challenge to recommendations and motion for reconsideration and/or rehearing. [Agency] argued that S.K. was not presently without proper care and control while in the care of Petitioner/Guardian [A.M.] and should not have been adjudicated dependent; if S.K. was dependent, the [trial] court can only award temporary legal custody to a relative who is at least 21 years of age and Petitioner/Guardian [A.M.] was 20 years of age . . . .

Guardian filed a response to [Agency's] *nunc pro tunc* challenge to recommendations and motion for reconsideration and/or rehearing on September 21, 2022. Guardian argued that the findings of fact made by the hearing officer were sufficient to find that S.K. was dependent as she was "out of the care of her [Maternal] Grandmother who is legal custodian in that no person has authority to make medical appointments or address medical needs on behalf of the child, the home that custodian Maternal Grandmother was in at the time of custody being granted was no longer habitable, that custodial Maternal Grandmother does not currently have any income to support the child, that custodial Maternal Grandmother does not currently reside in a place which the child could reside in (she resided in a boarding home and rents one room), and neither parent was able to take the child." [The trial] court granted [Agency's] *nunc pro tunc* request and denied the motion for reconsideration and/or rehearing on September 21, 2022.

The following findings of fact which were recommended by Hearing Officer Jones were adopted by [the trial] court on September 21, 2022:

Maternal Grandmother was granted legal and physical custody of [S.K.] in Philadelphia Dependency Court in April 2019. At the time of the filing of [A.M.'s] Petition it was believed that Maternal Grandmother resided in Delaware County and that the residence was in foreclosure. Maternal Grandmother confirmed in her testimony that her home in Delaware County is in foreclosure and she further testified that she is now renting a bedroom in a house in Kennett Square. Two additional men rent rooms in this home in Kennett Square. Maternal Grandmother only knows their first names. The home in Delaware County was left unfit and uninhabitable and [S.K.] would be unsafe in that home. Maternal Grandmother's rented one-bedroom [residence] has not been seen by [] Agency as Maternal Grandmother only disclosed her new residence at the hearing and background checks have not been done on any individuals residing in the Kennett Square home where Maternal Grandmother now resides. Maternal Grandmother further testified that she was uncertain as to whether she would be a resource for [S.K.] and agreed [S.K.] could remain with [A.M.,] who is [S.K.'s] sister.

[S.K.] is a 16-year-old female who is currently in the 11th grade at Rustin High School in West Chester School District. She is currently residing with her 20-year-old sister, [A.M.], in an apartment in West Chester. [S.K.] has been residing with her sister, [A.M.], since on or about June 1, 2022 when she left Maternal Grandmother's Delaware County home. Her sister is providing for [S.K.'s] needs. [S.K.], as stated above, was present at the adjudication hearing; she was well groomed, appropriately dressed, and able to present her position through her GAL that she wanted to remain with her sister and did not want to live with Maternal Grandmother.

Mother testified that she still has parental rights but has not cared for [S.K.] since April 2019. . . . Mother states that she is not interested in being a resource for [S.K.]. . . . Mother believes it is in S.K.'s best interest to stay in the care of her sister.

- 3 -

At the September 20, 2022 dispositional hearing, Hearing Officer Jones made the following findings regarding [Agency's] reasonable efforts to prevent removal from the home which were adopted by [the trial] court on October 4, 2022:

> [S.K.] left Maternal Grandmother's prior home in Delaware County on June 1, 2022 and is currently residing with her 20 year old sister, [A.M.]. Maternal Grandmother now rents a bedroom in a home in Kennett Square, PA. Both Maternal Grandmother and Mother agree [S.K.] should remain with her sister, [A.M.]. Neither Maternal Grandmother nor Mother are resources for [S.K.] at this time as per their testimony at the Adjudication Hearing on September 8th, and the Disposition Hearing on September 20, 2022. [] Agency had no jurisdiction to prevent or eliminate the need for removal of [S.K.] from Maternal Grandmother's prior home in Delaware County. Further, [S.K.] had already left that home prior to the filing of the application for leave of court to file a dependency petition and [] Agency had not been contacted in Chester County prior to [S.K.] leaving Maternal Grandmother's home.

> Further, the [trial] court finds that it would be contrary to [S.K.'s] welfare to return to Maternal Grandmother's prior home in Delaware County as it is no longer an option per findings made at the adjudication hearing on September 8, 2022. It would also be contrary to [S.K.'s] welfare to live with Maternal Grandmother as Maternal Grandmother has testified that she is not a resource for [S.K.] at this time.

Legal and physical custody of S.K. was to remain with Guardian [A.M.] and a visitation schedule with Maternal Grandmother was established. Neither the September 21, 20[2]2 adjudication order [n]or October 4, 2022 dispositional order was appealed. Permanency review hearings were held on a regular basis before Hearing Officer Jones.

On March 12, 2024, S.K.'s [guardian *ad litem* (GAL), Cecil Hoskins, Esq.,] filed an emergency relist request [("emergency motion")] and further requested a hearing before [the trial court]. [The trial] court scheduled a permanency review hearing on March 28, 2024, which was bifurcated and concluded on April 5, 2024.

Trial Ct. Op., 7/19/24, at 2-6 (footnotes omitted and some formatting altered).

On April 8, 2024, the trial court entered an order determining that S.K. was in placement. The trial court further ordered that it would retain jurisdiction over S.K. after her eighteenth birthday. Agency timely appealed and simultaneously filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). In lieu of a Rule 1925(a) opinion, the trial court issued a statement which adopted the reasoning of its April 8, 2024 order. *See* Trial Ct. Statement, 5/15/24. Pursuant to the order of this Court,[1] the trial court issued a supplemental opinion explaining that S.K. has always been in placement and it was not appropriate for the trial court to revisit its initial determination nearly two years later. *See* Trial Ct. Op., 7/19/24, at 8-9.

Agency raises the following issue on appeal:

Did the trial court err in declining to classify [S.K.] as non-placement when [S.K.] has never been in the physical and legal custody of . . . Agency?

Agency's Brief at ix (some formatting altered).

---

[1] We note that in its order, this Court denied A.M.'s application to quash Agency's appeal. *See* Order, 1358 EDA 2024, 7/2/24, at 2 (unpaginated) (*per curiam*).

## Appealability

Before we address the merits of Agency's issue, we first examine whether we have jurisdiction over the instant appeal. Agency contends that the April 8, 2024 order is appealable as a collateral order. Agency's Brief at iii-iv.

A.M. responds that the April 8, 2024 order is not a collateral order because it did not change S.K.'s status, and requests that this Court quash this appeal. A.M.'s Brief at 5, 24.

Generally, "[f]or an order to be appealable, it must be (1) a final order, Pa.R.A.P. 341-342; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-312; or (3) a collateral order, Pa.R.A.P. 313." **Ashdale v. Guidi Homes, Inc.**, 248 A.3d 521, 525 (Pa. Super. 2021).

This Court has explained:

The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. **See** Pa.R.A.P. 313.

Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that only final orders are appealable as of right. To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied.

- 6 -

***In re W.H.***, 25 A.3d 330, 335 (Pa. Super. 2011) (some citations omitted and formatting altered).

> Case law has supported the argument, however, that certain interlocutory, non-final permanency orders are appealable as collateral orders under Pa.R.A.P. 313(b). ***Compare In re N.E.***, 787 A.2d 1040 (Pa. Super. 2001) (collateral order where DHS appealed from order requiring it pay portion of dependent child's dental bills); ***In re Tameka M.***, 580 A.2d 750 (Pa. 1990) (CYS's appeal from order requiring it reimburse foster family for expenses in sending child to private preschool is collateral order) ***with In re H.K.***, 161 A.3d 331 (Pa. Super. 2017) (right to participate and present evidence during dependency proceedings is not separate from, or collateral to, those proceedings); ***In re J.S.C.***, 851 A.2d 189 (Pa. Super. 2004) (order granting parent's petition to compel visitation not collateral order where CYS did not possess "right" to prevent parent from visiting with child).

***In re N.M.***, 186 A.3d 998, 1007-08 (Pa. Super. 2018) (some formatting altered); ***see also In re N.B.***, 260 A.3d 236, 242 (Pa. Super. 2021) (holding that an order for the agency to pay for an alcohol-monitoring device for the father was appealable as a collateral order).

Here, GAL requested that the trial court clarify S.K.'s placement status because it affected S.K.'s eligibility for Medicaid. ***See*** GAL's Emergency Mot., 3/13/24, at 1 (unpaginated). Further, at the hearing, both S.K.'s GAL and A.M. argued that classifying S.K. as being in placement would make her eligible for Medicaid until she reaches the age of twenty-six as well as independent living case management and Chafee educational grants. ***See*** N.T., 4/5/24, at 49, 56-58. Although, the order did not change S.K.'s status, we conclude that determining her eligibility for these benefits, similar to orders requiring an agency to pay for services, is separable from the main cause of

action.  *See, e.g.*, *N.B.*, 260 A.3d at 242; *N.E.*, 787 A.2d at 1041 n.1. Likewise, we find that S.K.'s eligibility for these benefits and Agency's obligation to provide services after S.K.'s eighteenth birthday are rights too important to be denied review.  *See, e.g.*, *N.B.*, 260 A.3d at 242.  Lastly, because S.K. has reached the age of eighteen, if review is postponed, Agency's right to review would be irreparably lost.  *See W.H.*, 25 A.3d at 335.  For these reasons, we conclude that the order appealed from is an appealable collateral order.  Therefore, we decline to quash and will address the merits of Agency's issue.  *See N.M.*, 186 A.3d at 1008.

### Whether S.K. was in Placement

Agency argues that S.K. was not in placement at the time the trial court entered its order because she was not in foster care and because the court had not granted Agency physical and legal custody of S.K.  Agency's Brief at 1-7.  Agency contends that when a child is placed in foster care or formal kinship care, legal and physical custody of the child is transferred to the county agency.  *Id.* at 2.  Agency claims that in either circumstance, the foster parent or kinship care provider must be a licensed foster parent.  *Id.* at 2-3 (citing, *inter alia*, Department of Pub. Welfare (DPW), OCYF Bulletin-00-03-03). Agency explains that under the Juvenile Act,[2] a child is in "out-of-home placement" when the child is in a setting that "provides 24-hour substitute care for a child away from the child's parents or guardians and for whom the

_____

[2] 42 Pa.C.S. §§ 6301-6375.

county agency has placement care and responsibility." *Id.* at 3 (citing 42 Pa C.S. § 6302).

Agency argues that when the trial court granted A.M. physical and legal custody of S.K., A.M. was serving as an informal kinship resource, and not as a licensed foster parent. *Id.* at 4, 6. Further, Agency contends that A.M. has had physical and legal custody of S.K. throughout this case, and Agency has never had physical and legal custody of S.K. *Id.* at 5-6. Therefore, Agency concludes that S.K. has never been in placement, and S.K. is not eligible for a Chafee educational grant or similar services available to youths who were in foster care placement through the age of sixteen. *Id.* at 6-7.

A.M. responds that the trial court, not Agency, determines what form of placement serves the best interests of a dependent child. A.M.'s Brief at 16. A.M. also argues that the definition of "out-of-home placement" in the Juvenile Act does not include a requirement that Agency be granted legal and physical custody of a child. *Id.* at 16-17.[3]

> Initially, we note that
>
> the standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted).

---

[3] The GAL did not file a brief.

Further, to the extent that Agency's issue requires this Court to interpret the Juvenile Act, it is well-established that statutory interpretation presents "a question of law. Therefore, our review is plenary." *In re L.C., II*, 900 A.2d 378, 380 (Pa. Super. 2006) (citations omitted).

It is well-established that:

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). The plain language of the statute is generally the best indicator of legislative intent, and the words of a statute "shall be construed according to rules of grammar and according to their common and approved usage. . . ." 1 Pa.C.S. § 1903(a). We generally look beyond the plain language of the statute only where the words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922.

*In re C.L.P.*, 126 A.3d 985, 989 (Pa. Super. 2015) (some citations omitted); *see also In re S.H.*, 71 A.3d 973, 981 (Pa. Super. 2013) (explaining that regarding DPW bulletins, "[i]t is well settled that when the courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation" (some citations omitted and some formatting altered)).

Our Supreme Court has held:

In making any disposition pursuant to its authority under Section 6351, the [trial] court is guided by the overriding principle of acting "to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1). We, too, in construing

- 10 -

the Juvenile Act, are directed by Section 6301 to observe the same stated purpose. Accordingly, that result which will encourage, rather than discourage, action related to the best interests and protection of the child, is preferred.

*In re Lowry*, 484 A.2d 383, 388 (Pa. 1984).

The Juvenile Act provides the following definitions:

"**Dependent child.**" A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk; . . .

\* \* \*

"**Out-of-home placement**." A setting that provides 24-hour substitute care for a child away from the child's parents or guardians and for whom the county agency has placement care and responsibility. The term includes resource family homes and supervised settings in which a child is living and, for a child who has attained 18 years of age, a supervised setting in which the individual is living independently.

42 Pa.C.S. § 6302.

Section 6351 of the Juvenile Act provides as follows regarding the disposition of a dependent child:

**(a) General rule.—**If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

(1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the

- 11 -

court prescribes, including supervision as directed by the court for the protection of the child.

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

(i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.

(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.

(iii) A public agency authorized by law to receive and provide care for the child.

\* \* \*

**(f) Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

\* \* \*

(8) The services needed to assist a child who is 14 years of age or older to make the transition to successful adulthood and whether the services are being provided as required under 67 Pa.C.S. § 7505 (relating to transition plan and services).

(8.1) Whether the child continues to meet the definition of "child" and has requested that the court continue jurisdiction pursuant to section 6302 if the child is between 18 and 21 years of age.

42 Pa.C.S. § 6351(a)(1)-(2), (f).

The OCYF Bulletin on Kinship Care Policy provides the following definitions:

> Formal Kinship Care: Situations in which the county agency has legal custody of the child and out of home placement is made with a kinship caregiver who is an approved foster parent by a licensed foster family care agency.
>
> Informal Kinship Care: Situations in which arrangements are made by the parents for the placement of their child with a kinship caregiver.
>
> Kinship Care: The full-time nurturing and protection of a child who is separated from his/her parents and placed in the home of a caregiver who has an existing relationship with the child and/or the child's family. . . .
>
> \* \* \*
>
> Placement: Twenty-four hour out-of-home care and supervision of a child.

OCYF Bulletin 00-03-03 at 5.

> Our Supreme Court has explained:
>
> Department of Public Welfare regulations require certification of a home as an approved foster care home before a child may be placed in the home by an agency . . . .
>
> \* \* \*
>
> In ordering a disposition under Section 6351, the court acts not in the role of adjudicator reviewing the action of an administrative agency, in which case, the regulations promulgated to bind that agency could not be ignored; rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests.
>
> Moreover, a review of the plain language of Section 6351 supports the view that departmental regulations are not binding upon the court entering a dispositional order under Section 6351. . . . [I]n the case of a transfer to an individual under subsection (i), the legislature has not required a showing of licensure or authorization by law to receive the child, but has required that the individual be found "**by the court** to be qualified to receive and care for the child." Thus, Section 6351, facially, requires that the qualifications of an **agency** are to be judged by its compliance with law, but that the qualifications of an individual are to be

- 13 -

judged by the court, without regard to whether the individual is as yet authorized by law, *i.e.* as an approved foster care home, to receive and care for the child.

*Lowry*, 484 A.2d at 386-87 (emphases in original).

Further a county agency must comply with a trial court's dispositional order to supervise a child placed in a home that has not been certified or licensed as a foster care home. *See id.* at 387-88.

Here the trial court explained:

> At the outset, [the trial] court acknowledges that S.K. has never been in physical and legal custody of the [] Agency, S.K. has never been in foster care, and S.K.'s sister has maintained physical and legal custody of S.K. through kinship care. However, [the trial] court disagrees with [] Agency's position that S.K. is not a placement child as she was removed from her home and declared dependent by clear and convincing evidence set forth at a September 8,2022 adjudication hearing. An order to that effect was entered on September 21, 2022. S.K. was placed in her sister's home, which was certainly the least restrictive placement in a willing kinship home. [] Agency was ordered to perform a home study of [A.M.'s] home, presumably to start the process of foster kinship placement. However, it appears that [] Agency failed to follow through with this process. . . .
>
> * * *
>
> [S.K.] was adjudicated dependent by Hearing Officer Jones on September 8, 2022, and an order was entered on September 21, 2022. That order included findings of fact that supported the Hearing Officer's determination that by clear and convincing evidence, S.K. was without proper parental care and control. The Hearing Officer further found that it was in S.K.'s best interest to be removed from the home of . . . Maternal Grandmother. Temporary legal and physical custody was transferred to sister, [A.M.]. [] Agency was ordered to perform a home study of [A.M.'s] residence. [] Agency was further ordered to conduct a home study of Maternal Grandmother's new residence if she decided that she wanted to be a resource for S.K. A disposition hearing was scheduled on September 20, 2022.

- 14 -

On September 20, 2022, Hearing Officer Jones made findings regarding [] Agency's reasonable efforts to prevent removal from the home. Hearing Officer Jones further found "that it would be contrary to [S.K.'s] welfare to return to Maternal Grandmother's prior home in Delaware County as it is no longer an option per findings made at the adjudication hearing on September 8, 2022. It would also be contrary to [S.K.'s] welfare to live with Maternal Grandmother as Maternal Grandmother has testified that she is not a resource for [S.K.] at this time." The hearing officer's recommendations were approved by the entry of an order on October 4, 2022.

Based on that language, [the trial] court's only interpretation is that S.K. has always been a placement child. No appeals were filed to either the adjudication or disposition. The language from these orders clearly indicates that S.K. was removed from Maternal Grandmother's home, her home of origin, and placed with Sister[, A.M.]. It would not be proper for [the trial] court to revisit those findings over 22 months later. [] Agency nevertheless asserts that S.K. is a non-placement child and has internally handled this case as a non-placement case. [The trial] court has no involvement in the internal decision-making of [] Agency, and the fact that [] Agency chose to classify S.K. as a non-placement child in direct contravention of the adjudication and disposition language does not make it so.

\*    \*    \*

It is clear that S.K's sister was a kinship care resource that was substitute care for a child away from the child's parents or guardian and for whom the county agency has placement care and responsibility. Further, it is the ultimate goal after removal of a child from their home to place that child in the care of kin. Placement with kin does not negate the fact of placement after removal. Therefore, [] Agency's arguments on appeal are without merit and should be denied.

Trial Ct. Op., 7/19/24, at 6-10 (some formatting altered).

Based on our review of the record and the applicable law, we discern no abuse of discretion or error of law by the trial court. *See R.J.T.*, 9 A.3d at 1190. Further, we agree with the trial court that the adjudication of

dependency and the transfer of physical and legal custody of S.K. to A.M. constitutes "out-of-home placement" under the Juvenile Act.

Neither the Juvenile Act nor OCYF Bulletin 00-03-03 limit the meaning of "placement" to only dependent children who are in foster care or formal kinship care. *See* 42 Pa.C.S. § 6302 (defining "out-of-home placement" as "setting that provides 24-hour substitute care for a child away from the child's parents or guardians and for whom the county agency has placement care and responsibility"). Further, Agency has not cited any authority to support its argument that a dependent child is only in placement when the trial court grants a county agency legal and physical custody when ordering the placement of a dependent child. The Juvenile Act does not define "placement care and responsibility." Construing the plain language of the statute and keeping in mind the purpose of the Juvenile Act is "to provide for the care, protection, and wholesome mental and physical development of children," we conclude that "placement care and responsibility" includes any court-ordered supervision of a dependent child by an agency, not just circumstances where an agency is granted legal and physical custody of a child. *See Lowry*, 484 A.2d at 388; *C.L.P.*, 126 A.3d at 989.

Here, the trial court, in its September 21, 2022 order, adjudicated S.K. dependent, removed her from Maternal Grandmother's care, and granted A.M. physical and legal custody of S.K. *See* Trial Ct. Order, 9/21/22, at 1-2; *see also* Trial Ct. Order, 10/4/22, at 2; Trial Ct. Suppl. Op. at 7. Further, the trial court ordered Agency to perform a home study of A.M.'s residence and

- 16 -

determine if S.K. was eligible for assistance with extracurricular activities and life skills. *See, e.g.*, Trial Ct. Order, 10/4/22, at 2; Trial Ct. Order, 9/21/22, at 2. As our Supreme Court explained, a trial court may order a child to be placed with an individual who is not a licensed foster care parent under Section 6351 of the Juvenile Act if the trial court determines that the individual is qualified to receive and care for the child and the placement is in the best interests of the child. *See Lowry*, 484 A.2d at 387-88. Further, a county agency must comply with the trial court's dispositional orders regarding the placement of a child even if the placement conflicts with DPW regulations. *See id.* at 386-88. On this record, we agree with the trial court in its conclusion that S.K. was in out-of-home placement within the meaning of the Juvenile Act effective September 21, 2022, the date of the trial court's dispositional order, issued more than twenty-two months ago; and that Agency is obligated to provide the required services and support. Accordingly, Agency is directed to provide S.K with the appropriate placement care and responsibility, including any court-ordered supervision and services, consistent with the trial court's dispositional order of September 21, 2022. *See* 42 Pa.C.S. §§ 6302, 6351(a)(2)(i), 6351(f)(1). For these reasons, we affirm the trial court's order.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>1/28/2025</u>