J-E02008-21

2022 PA Super 140

| | | |
|---|---|---|
| MARK AND LEAH GUSTAFSON, INDIVIDUALLY AND AS ADMINISTRATORS AND PERSONAL REPRESENTATIVES OF THE ESTATE OF JAMES ROBERT ("J.R.") GUSTAFSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | No. 207 WDA 2019 |
| v. | : | |
| SPRINGFIELD, INC. D/B/A SPRINGFIELD ARMORY AND SALOOM DEPARTMENT STORE AND SALOOM DEPT. STORE, LLC D/B/A SALOOM DEPARTMENT STORE | : | |
| THE UNITED STATES OF AMERICA | : | |
| Intervenor | : | |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s): 1126 of 2018

BEFORE:  PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON, J., DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

OPINION IN SUPPORT OF PER CURIAM ORDER TO REVERSE BY BENDER, P.J.E.:                                   **FILED: AUGUST 12, 2022**

I also vote to reverse the Order dismissing the Gustafsons' case and remand for the Defendants to file their Answer and New Matter.  I write separately because I would reverse on both issues presented by the Gustafsons: I find the PLCAA does not apply to the facts of this case, and that the PLCAA is unconstitutional.

I.

For the following reasons, and contrary to Part I of Judge Kunselman's Opinion in Support of *Per Curiam* Order to Reverse ("Judge Kunselman's Opinion"), I would reverse the trial court's order dismissing the Gustafson's lawsuit based on the applicability of the product-defect exception to the PLCAA's definition of a qualified civil liability action ("QCLA"). As is axiomatic,

> [t]he question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Accordingly, our standard of review is to determine whether the complaint adequately states a claim for relief under any theory of law. To evaluate a demurrer under this standard, the court must accept as true all material averments of the complaint and may sustain the demurrer only if the law will not permit a recovery. Where any doubt exists as to whether a demurrer should be sustained, it must be resolved in favor of overruling the demurrer.

*Mistick, Inc. v. N.W. Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. 2002) (cleaned up).

A.

I agree with Judge Kunselman that this case meets the general definition of a QCLA under the PLCAA.[1]  I depart from her analysis with respect to the applicability of the exception to the definition of a QCLA set forth in Section

---

[1] **See** 15 U.S.C. § 7903(5)(A) ("The term [QCLA] means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party…."). "A [QCLA] may not be brought in any Federal or State court." 15 U.S.C. § 7902(a).

7903(5)(A)(v). Regarding that exception, the Gustafsons asserted before the trial court that the "discharge of the product" was not "caused by a volitional act that constituted a criminal offense[.]" 15 U.S.C. § 7903(5)(A)(v) (emphasis added). They maintained that the Juvenile Delinquent did not voluntarily discharge the weapon; rather, they posited that, while he may have intentionally pulled the trigger, he did not intend for the gun to discharge, as he believed the weapon was unloaded when its magazine had been removed. Additionally, because this case involved a juvenile offender adjudicated in the juvenile court system, and not in the criminal court, the Gustafsons maintained that even if there was a volitional act within the meaning of Section 7903(5)(A)(v), that act did not constitute a criminal offense within the meaning of the exception.

The trial court rejected the applicability of Section 7903(5)(A)(v) for the following reasons:

> [The Gustafsons] next argue that the present case falls under the product[-defect] exception as there was no occurrence of a "volitional act that constituted a criminal offense." 15 U.S.C. § 7903(5)(A)(v). [They] first argue a lack of a criminal offense on the part of the Juvenile Delinquent, as "[d]elinquency proceedings are not criminal in nature…[.]" **In Interest of G.T.**, 597 A.2d 638, 641 (Pa. Super. 1991). [Springfield and Saloom] point out that a "delinquent act" is defined under Pennsylvania law specifically as "an act designated a crime under the law of this Commonwealth…[.]" 42 Pa.C.S.[] § 6302[]. [Springfield and Saloom] additionally reference the Supreme Court of Illinois case of **Adames v. Sheahan**[, 909 N.E.2d 742, 745 (Ill. 2009),] as being the only case presently adjudicated which has addressed the issue of applying the PLCAA "criminal offense" provision to a minor.

\*\*\*

The **Adames** case concerned a minor who shot and killed another minor using a handgun belonging to his father. **Id.** at 761. The minor was adjudicated delinquent through the Illinois juvenile delinquency process, with the court in the juvenile proceeding finding that the minor committed involuntary manslaughter. **Id.** The Illinois Supreme Court, when confronted with the applicability of the "criminal misuse" provision of the PLCAA, looked to the definition of "criminal" found in Black's Law Dictionary, which reads: "[h]aving the character of a crime; in the nature of a crime." **Id.** The Illinois Supreme Court found that, although the minor was not charged or adjudicated criminally, he certainly violated the Illinois Criminal Code based on his juvenile adjudication. **Id.** The act of shooting and killing another "was 'in the nature of a crime,'" and thus fell squarely within the categorization of criminal misuse under the PLCAA. **Id.** Here, the [c]ourt finds the **Adames** reasoning persuasive. Although [the Gustafsons] correctly point out that juvenile proceedings are not criminal in nature, delinquent acts in Pennsylvania are by definition "act[s] designated a crime under the law of the Commonwealth of Pennsylvania." 42 Pa.C.S.[] § 6302.

Additionally, the focus of the PLCAA is on the "volitional act" and the criminal character thereof. As explained by the **Adames** Court, committing an act amounting to involuntary manslaughter, whether prosecuted criminally or not, still amounts to … committing a criminal act and is thus applicable under the "criminal misuse" portion of the PLCAA. The [c]ourt thus declines to adopt [the Gustafsons'] reading [of the phrase,] "volitional act that constituted a criminal offense."

Trial Court Opinion, 1/15/19, at 7-8.

The trial court did not specifically address the other aspect of the Gustafsons' argument for the applicability of the products liability exception— that the at-issue act was not volitional in nature. However, a similar argument was also rejected in **Adames**. The **Adames** Court held that the decision to point a gun and pull the trigger was volitional, even if the resulting injuries were not intended. **See Adames**, 909 N.E.2d at 763. Here, relying in large part on **Adames** as well, my learned colleague brushes these arguments

aside, concluding that "[w]henever a defective gun causes harm and a crime is involved, exception (v) cannot apply[,]" because "*all* criminal offenses require a *volitional* act."  Judge Kunselman's Opinion at 9 (citing 18 Pa.C.S. § 301) (emphasis in original).[2]  This Court is not compelled to follow *Adames*. Indeed, I would decline to do so, as I am unpersuaded by the *Adames* Court's analysis on both points.

B.

The product-defect exception to the PLCAA's general preemption of QCLAs contains a caveat for circumstances "where the discharge of the product was caused by a volitional act that constituted a criminal offense."  15 U.S.C. § 7903(5)(A)(v).  It is important to note that Congress, in drafting the PLCAA, could have easily referred to discharges caused by 'criminal acts,' or to 'delinquent acts by juveniles,' or used similarly straightforward language, if they intended the caveat to encompass any discharge that occurs during the commission of any crime.  I do not believe this Court can assume that Congress's word choice was accidental or inconsequential in this regard.

Nevertheless, Judge Kunselman invokes Section 301 of the Crimes Code in declaring that all criminal offenses arise necessarily from volitional acts.[3]

---

[2] The express terms of Section 301, however, also permit criminal liability based on "the omission to perform an act…."  18 Pa.C.S. § 301.  Thus, there are at least some circumstances where proof of a voluntary act is not required to prove the commission of a criminal offense.

[3] Judge Kunselman admits her interpretation of this caveat to the product-defect exception renders the exception "toothless[.]"  Judge Kunselman's Opinion at 9.

But Section 301 itself demonstrates that this is not the case, as criminal offenses may also be premised on "the omission to perform an act of which [a person] is physically capable." 18 Pa.C.S. § 301(a). While an omission to do an act may itself be volitional, it is certainly not a **volitional act**. Indeed, it is not an act at all. Thus, Judge Kunselman's rejection of Appellant's attempt to invoke the product-defect exception, premised on the assumption that a plea to the commission of a crime (or to the equivalent in a juvenile court) is necessarily an admission to a "a volitional act that constituted a criminal offense," is flawed in my view. 15 U.S.C. § 7903(5)(A)(v).

Instead, I believe the exceptional circumstances of this case call into question whether the discharge of the firearm was caused by a volitional act, even though a criminal offense was committed. In typical circumstances, the intentional act of pulling a trigger is effectively identical to intentionally firing the gun, regardless of whether the resulting injury was intended. However, the factual averments of the Gustafsons suggest otherwise, as they contend that while the Juvenile Delinquent's pulling of the trigger was volitional, the firing of the gun was not, because he believed that the firearm was not loaded when the magazine was disengaged. I do not think the relevant criminal act of discharging the gun was volitional, even if it was criminal in nature. This is the essence of the product defect claims at issue: whether the gun could have been made safer such that a person in the Juvenile Delinquent's position would have been deterred from pulling the trigger when he, in fact, did not intend for the gun to discharge. This deterrent effect would be meaningless if the

act of pulling the trigger was indistinguishable from the act of firing the gun for purposes of what constitutes a volitional act in the context of the product-defect exception. The Gustafsons provide an illustrative analogy:

> Even if pulling the trigger was "volitional," that does not make a discharge "caused by a volitional act" any more than an explosion would be "caused by [the] volitional act" of answering a cell phone if, unbeknownst to you, terrorists had wired your phone to a remote bomb. In both cases, there was "volition" to engage in a seemingly non-dangerous act, but not to cause an unforeseen dangerous result.

Appellants' Brief at 33.

I agree with the Gustafsons. Here, based upon the factual averments contained in their complaint, there is an atypical disconnect in the chain of causation between pulling the trigger and discharging the weapon that is not present in archetypal criminal use or misuse of a firearm cases that Congress sought to address in the caveat to the product-defect exception. In my view, this distinction is factual, not legal. It is dependent on the specific circumstances of the case before us—issues of fact—that ultimately determine whether the underlying act that constitutes a criminal offense was volitional. It may be true that most criminal cases involving firearms do not involve these idiosyncratic fact patterns. However, based on the unique facts averred by the Gustafsons in this case, I cannot say "with certainty that no recovery is possible" due to preemption by the PLCAA. **_Mistick_**, 806 A.2d at 42.[4]

_____

[4] I would note that the Juvenile Delinquent's adjudication for involuntary manslaughter does not adequately demonstrate that his adjudication was
*(Footnote Continued Next Page)*

C.

Additionally, Pennsylvania's General Assembly has removed certain criminal acts from the class of criminal offenses, where the distinction between criminal acts that constitute criminal offenses, and criminal acts that do not, is the age of the perpetrator. As argued by the Gustafsons,

> [w]hile PLCAA's general definition of [QCLA] bars actions where harm results from a "criminal or unlawful" misuse of a firearm (15 U.S.C. § 7903(5)(A)), the disqualifying provision in the products liability exception only bars cases involving a "criminal" act. [15 U.S.C.] § 7903(5)(A)(v). When a legislature excludes one term from a list of terms, it is excluding that term from its scope. ***Indep. Oil & Gas Ass'n of Pa. v. Bd. Of Assessment Appeals***, 572 Pa. 240, 247 (2002). Thus, Congress intended to allow

_____

necessarily predicated on the commission of a volitional act based on a reading of the elements of that offense alone.

> Involuntary manslaughter, which differs from murder in that specific intent and malice are absent, encompasses[] the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.

***Commonwealth v. Moore***, 344 A.2d 850, 853 (Pa. 1975) (quotation marks omitted).

Because the offense of involuntary manslaughter may be predicated on the negligent failure to perform a legal duty, it is not clear to me that the Juvenile Delinquent was adjudicated delinquent based on his commission of a volitional act, as the definition of that offense encompasses negligently omitting to perform a legal duty that resulted in a death. Thus, even if Appellant did not volitionally fire the gun, he could have committed the offense of involuntary manslaughter by negligently failing to verify if the gun was unloaded when he pulled the trigger under the belief that it would not fire.

products liability claims involving "unlawful" but not "criminal" acts.

Juvenile offenses—such as the Juvenile Delinquent's involuntary manslaughter adjudication—are "unlawful" but not "criminal," as they are not subject to the criminal justice system. The "discharge" that killed J.R. was therefore not a disqualifying "criminal offense" under [15 U.S.C.] § 7903(5)(A)(v).

Appellants' Brief at 31.

I agree with the Gustafsons. Even assuming that the Juvenile Delinquent's firing of the gun was a volitional act, the product-defect exception only excludes volitional acts of discharging a firearm that "constitute[] a criminal offense." 15 U.S.C. § 7903(5)(A)(v). The **Adames** Court reasoned that Billy's commission of a juvenile offense "had the character of a crime and was 'in the nature of a crime' and, therefore, was … criminal…." **Adames**, 909 N.E.2d at 761. Thus, the **Adames** Court held that because Billy had ostensibly violated a criminal statute (despite being tried as a juvenile), the underlying act was still criminal and constituted a criminal offense. However, I do not believe that whether the at-issue act was 'in the nature of a crime' is the relevant inquiry. Even if construed as a volitional criminal act, it still did not 'constitute a criminal offense' in Pennsylvania because our General Assembly has determined that certain criminal acts of juveniles should be treated separate and apart from the way we treat criminal offenses generally. Because the Juvenile Delinquent was not tried as an adult in criminal court, the pertinent act of firing the handgun did not constitute a criminal offense under the undisputed facts of this case.

II

On the second issue raised by the Gustafson's, I join part II of Judge Kunselman's Opinion in Support of *Per Curiam* Order to Reverse. I agree with Judge Kunselman's conclusions and supporting analyses that the Protection of Lawful Commerce in Arms Act of 2005, 15 U.S.C. §§ 7901-7903 ("PLCAA"), "is not a valid exercise of Congress's Commerce Clause authority[,]" Judge Kunselman's Opinion at 32, that Section 7902(b) of the PLCAA violates the Tenth Amendment, *id.* at 36, and that the constitutionality of the PLCAA cannot be salvaged by severance of Section 7902(b), *id.* at 37. I find the PLCAA offends the United States Constitution and, therefore, it cannot bar the Gustafson's product-liability lawsuit.

**CONCLUSION**

In sum, I would reverse the trial court's order granting demurrer because I disagree with the court's determination that the product-defect exception did not apply in the circumstances of this case, for the reasons set forth above. I would also reverse because I wholeheartedly agree with Judge Kunselman's determinations that the PLCAA violates the Commerce Clause, that Section 7902(b) of the PLCAA violates the Tenth Amendment, and that Section 7902(b) is not severable, for reasons set forth in her opinion.